609 A.2d 155

COMMONWEALTH of Pennsylvania, ex rel.
James P. MacELREE, II, Appellant,

v.

Richard LEGREE, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1991.

Decided May 19, 1992.

Reargument Denied June 25, 1992.

382

Stuart Suss, West Chester, for appellant.

Sterling E. Flowers, North Wales, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This action in quo warranto seeks to prevent appellee, Richard Legree, from simultaneously holding the elective offices of Constable for the City of Coatesville, Second Ward, and Council Member for the City of Coatesville. The trial court reviewed the relevant statutes and entered judgment on the pleadings in favor of appellee, permitting him to hold both positions. This direct appeal followed pursuant to 42 Pa.C.S. § 722(2).

Appellee was elected to and installed in the office of Constable for the City of Coatesville, Second Ward, in 1985. When he was elected to the office of Council Member of the City of Coatesville in 1989, refusing to relinquish the office of constable, the District Attorney of Chester County initiated an action in quo warranto, challenging appellee's authority to hold the office of councilman.

The district attorney cited several statutory provisions which would prohibit an individual from holding the dual offices. First, he relied on 65 P.S. § 14:

**§ 14. Councilmen ineligible to city or county offices**

Members of councils shall not hereafter hold any city or county offices in the choice of the people while serving as a member of said councils.

Next, he cited 53 P.S. § 36001, part of the Third Class City Code:

**§ 36001. Qualifications of Councilmen**

The councilmen shall be at least twenty-one years of age, and shall be elected by the electors at large. They shall have been residents of the city wherein they shall be elected throughout one year next before their election, and shall reside therein throughout their terms of service. No officer of the United States or of the Commonwealth of Pennsylvania (except notaries public or officers of the

militia), nor any county officer, nor any officer of any school district embraced in the territory of said city, nor any officer or employe of said city, or of any department thereof, nor any member or employe of a municipality authority of which the city is a member, shall serve as a councilman during his continuance or employment, except as hereinafter provided.

Finally, the district attorney cited the Home Rule Charter of the City of Coatesville, section 203:

*Section 203: Prohibitions*

No Council Member shall, during the term of office of the Council Member, hold any other elected public office nor any other compensated position in the City of Coatesville Government.

Each of these provisions would prohibit a constable for the City of Coatesville from serving as a member of the Coatesville city council.

The common pleas court, however, relied on sections 10 and 12 of the Ethics Act, 65 P.S. §§ 410 and 412, to permit appellee to hold both offices and to preempt any other statutes which prohibit the dual office-holding. The statutes relied on by the court read as follows:

§ 410.  **Constables**

Nothing in this act, or in any other law or court rule shall be construed to prohibit any constable from also being an officer of a political body [1] or political party as such terms are defined in the act of June 3, 1937 (P.L. 1333, No. 320) [25 P.S. § 2600 et seq.], known as the "Pennsylvania Election Code," and the same may hold the office of a county, State or national committee of any

---

**1.** "Political body" is defined in the Election Code under "Article VIII—Party Organization." The same section, 25 P.S. § 2831, "Definition of political parties and political bodies," defines both terms. Both entities nominate candidates for public office; the distinction between "parties" and "bodies" is in the number of votes received by their candidates in prior general or municipal elections. If the candidates polled more than a threshold percentage of the votes, the entity is a "party"; if less, it is a "political body." In the Election Code, the term "political body" does *not* include governmental bodies such as legislatures or municipal councils.

political party, and may run for and hold any elective office, and may participate in any election day activities.

§ 412. **Conflict of law**

If the provisions of this act conflict with any other statute, ordinance, regulation or rule, the provisions of this act shall control.

65 P.S. §§ 410, 412.

■ Section 410 permits a constable to: 1) be an officer in a political party, 2) hold the office of county, State, or national committeemember of any political party, 3) run for and hold any elective office, and 4) participate in any election day activities. The question is the meaning of the phrase "any elective office" in the third clause of the statute. The context of the phrase suggests that the most reasonable interpretation is "any elective office of any political party," which is consistent with the thrust of the statute.

The statute in question has an interesting history, set forth in detail in the Opinion in Support of Affirmance in *Snyder v. Unemp. Comp. Bd. of Review*, 509 Pa. 438, 502 A.2d 1232 (1985). In 1977, by memorandum, this court prohibited partisan political activity by court personnel, including running for public office. In 1977, the legislature enacted the statute, then titled "court employees" rather than "constables," applicable to employees of common pleas courts and district justices of the peace as well as constables. The 1985 case of *Snyder, supra,* held that the legislative attempt to authorize political activity by court employees was an unconstitutional infringement on the Pennsylvania Supreme Court's exclusive constitutional mandate to administrate all courts and supervise all officers of the judicial branch. Following the *Snyder* decision, the legislature amended section 410 in 1989 to limit its effect to constables—eliminating reference to court employees—but did not change the operative language permitting partisan political activity. Thus the current language of section 410 developed, in a convoluted way, as a response to the original 1977 supreme court memorandum forbidding court em-

ployees from participating in partisan political activity such as "being committee-persons, working at the polls or running for public office."

The activities listed in the 1977 memorandum as well as the activities specified in section 410 are, with one exception, uniform in being recognizably partisan political activities. The single exception occurs in the third clause of section 410, the language at issue in this case. If we interpret the third clause as suggested above—that constables may run for and hold any elective office *in a political party*, it has the effect of harmonizing the third clause with the remainder of section 410. It is reasonable to read the third clause of section 410 as permitting a constable to run for and hold any county, State, or national elective office in a political party, rather than any elective public office in government. *Ejusdem generis* expresses a rule of construction that a general expression used in a statute is limited to things similar to items specifically enumerated in the language preceding the general expression. *See, e.g., Summit House Condominium v. Commonwealth,* 514 Pa. 221, 227, 523 A.2d 333, 336 (1987); *Parker v. Hough,* 420 Pa. 7, 13, 215 A.2d 667, 670–71 (1966). This principle is applicable to the third clause of this statute, which is best understood as referring to elective offices *in political parties,* for the other three clauses specifically refer to partisan political activity. We believe this to be the most reasonable construction consistent with legislative intent.

This interpretation of section 410 has the further advantage of effectuating the purpose of the entire statute, referred to as the Ethics Act. The first section of the statute, 65 P.S. § 401, states that its purpose is "to strengthen the faith and confidence of the people of the State in their government." When section 410 was originally enacted, it purported to apply to all court employees; if we were to read the third clause of section 410 in isolation, it would have permitted the secretary of one magistrate to run for and hold a position as a magistrate in another district simultaneously. It would have permitted a magis-

trate to run for and hold the office of district attorney while retaining his position as magistrate, though this would violate 65 P.S. § 7. It would have permitted a constable to run for and hold the position of justice of the peace while retaining the office of constable, though this would violate 65 P.S. § 17. Such interpretations surely would not foster and sustain public confidence in the integrity of government. Moreover, such a reading of the third clause, in view of the preemption provision of section 412, would override the clearly expressed will of the people of the City of Coatesville, who made it plain in their home rule charter that it was impermissible for government officials to hold two offices simultaneously. This, again, would weaken, rather than nurture, public confidence in government.

█ Therefore we interpret 65 P.S. § 410 to permit a constable to hold any elective office in a political party, not to hold any other governmental office. As 65 P.S. § 14, 53 P.S. § 36001, and section 203 of the Home Rule Charter of the City of Coatesville all prohibit a council member from simultaneously serving as a constable, the Commonwealth, rather than Mr. Legree, was entitled to judgment on the pleadings. We must reverse the order of the court of common pleas.

Order reversed.

McDERMOTT, J., files a dissenting opinion which is joined by LARSEN, J.

McDERMOTT, Justice, dissenting.

The statute in question clearly and unambiguously states that constables "may run for and hold *any* elective office." 65 P.S. § 410 (emphasis supplied). The Statutory Construction Act[1] provides, in relevant part, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). It seems to me that the

---

1. Act of Dec. 6, 1972, P.L. 1339, No. 290, § 3.

majority has gone to great lengths to violate this statutory maxim.

Moreover, since the effect of the majority's decision is to restrict a right which other citizens normally enjoy, i.e. the right to vie for public office, such a restriction should be imposed grudgingly, and the responsibility rests with the General Assembly to explicitly impose such limitations. The statute at issue here not only fails to explicitly impose such a limitation, the clear language of the statute is to the other extreme.

Consequently, I dissent.

LARSEN, J., joins in this dissenting opinion.