573 A.2d 218

**Ronald TOMINELLO and Thelma Tominello, his wife**

**v.**

**T. JANEWAY, P. Laing and Shadyside Hospital, a Corporation.**

**Appeal of T. JANEWAY.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1989.

Filed April 9, 1990.

Edward D. Klym, Pittsburgh, for T. Janeway, P. Laing and Shadyside Hosp.

Daniel M. Berger, Pittsburgh, for Tominello.

Robert B. Hoffman, Harrisburg, for Pa. Medical Society, amicus curiae.

Before DEL SOLE, KELLY and HESTER, JJ.

DEL SOLE, Judge:

Ronald and Thelma Tominello commenced a medical malpractice action against Dr. T. Janeway claiming that he was negligent in failing to timely diagnose and treat Mr. Tominello's knee infection. On November 20, 1987, a jury rendered a verdict in favor of Appellees and against Appellant in the amount of $250,000.00. Delay damages in the amount of $114,041.00 were added. On April 22, 1988, following denial of post trial motions, a judgment in the amount of $361,041.00 was entered on the verdict.

A timely appeal was filed. Dr. Janeway made no application for a supersedeas, and the Tominellos did not demand payment nor did they execute on the judgment. On April 11, 1989 the Superior Court affirmed the judgment of the trial court. On April 26, 1989, the Pennsylvania Medical Society Liability Insurance Company [PMSLIC], which was Dr. Janeway's primary liability insurance carrier at the time of the occurrence, paid the Tominello's $100,000.00. This represents the limits of its primary coverage. On April 28,

1989, the Tominellos filed a praecipe for a writ of execution against Dr. Janeway, and on May 3, 1989, PMSLIC paid the Tominellos $76,973.80, its pro rata share of delay damages and statutory interest.

■ On May 4, 1989 Dr. Janeway filed a motion for a protective order and stay of execution.[1] In this motion, Dr. Janeway claimed that the amount of the judgment still outstanding would be paid by the Medical Professional Liability Catastrophe Loss Fund [CAT Fund], which acknowledged responsibility for payment of sixty percent 60% of the delay damages, and the amount of the judgment ($150,000.00) which exceeds the ($100,000.00) coverage provided by the primary carrier, PMSLIC. He also contended that this amount would be paid by the date provided by statute, (40 P.S. § 1301.701(e)(2)), December 31, 1989, and that the Tominellos may not execute on his property before that time. The trial court, by order of May 4, 1989, denied Dr. Janeway's motion and he filed this appeal from the trial court's order.[2]

■ The Health Care Services Malpractice Act, 40 P.S. 1301.701 provides that the CAT Fund shall pay all awards, judgments and settlements for loss or damages against a health care provider as a consequence of any claim for professional liability brought against such health care pro-

1. Briefs amicus curiae in support of Dr. Janeway were filed by Joseph J. Pulcini, Jr., Director of the Medical Professional Liability Catastrophe Loss Fund, The Hospital Association of Pennsylvania, and the Pennsylvania Defense Institute.

2. The parties, in post-argument submissions, notified this court that the CAT Fund had paid the Tominellos as of December 29, 1989. The question whether this appeal is now moot has been raised because if an event occurs during the pendency of an appeal which renders it impossible for the appellate court to grant relief, the appeal will be dismissed. *Commonwealth v. Smith,* 336 Pa.Super. 636, 640, 486 A.2d 445 (1984). However, because we believe that a question still remains whether the Tominellos are due interest on the CAT fund's share of the payment from the time PMSLIC paid Dr. Janeway until December 29, 1989, and because this case involves issues of public importance that are capable of repetition likely to evade review if the the normal rules on mootness are applied, *Commonwealth v. Joint Bargaining Committee for the Pennsylvania Social Services Union,* 484 Pa. 175, 179, 398 A.2d 1001, 1003 (1979), we will reach the merits of this appeal.

vider to the extent such health care provider's share exceeds the basic insurance coverage in effect at the time of the occurrence. The Act further provides that all such claims shall be paid on or before December 31 following the August 31 by which they become final. 40 P.S. § 1301.701(e)(2).

Under this statutory scheme, a successful plaintiff may have to wait as long as fifteen (15) months for payment of the remainder of the judgment above that provided by the primary carrier if the final judgment on the case occurred on September 1, or may have to wait as short a time as three (3) months, if the final judgment date is August 31. In any case, plaintiffs have to await payment on the judgment, because there is a built in delay between the vesting of the right to collect from the Fund and the actual receipt of the payment. The question in this case, as framed by Appellant, is whether such plaintiffs may execute on the assets of the defendant in order to collect immediately,[3] or must they wait to collect on the normal CAT Fund payment date, the last working day of the year following the August 31 after entry of the judgment.

The question, thus framed, must be resolved in favor of the Appellant. The legislative history of the Health Care Services Malpractice Act [Act], and the statement of purpose contained in the Act itself at 40 P.S. § 1301.102, supports the conclusion that the General Assembly was required to balance competing interests in order to pass an Act which would guarantee that medical malpractice insurance would continue to be available, and that sufficient numbers of health care providers would continue to practice in this Commonwealth. In return successful plaintiffs are guaranteed a recovery of up to $1.2 million. However, they are asked to delay collecting from the CAT Fund, thus enabling the Fund to carry out its record keeping functions, which are essential to its calculations of its annual liability. This in turn insures the fiscal soundness of the CAT Fund

---

**3.** This is assuming that no appeal has been filed and no supersedeas has been granted.

which may levy an emergency surcharge in September if it were to be exhausted by the payment of all the claims which became final by the preceding August 31. *See,* 40 P.S. § 1301.701(e)(3).

Further balancing of interests is apparent in the provisions of the Act which make medical malpractice insurance and participation in the excess insurance scheme through the CAT Fund mandatory for all health care providers who are licensed in this Commonwealth. In return, such providers can then expect that their medical malpractice liability will be covered up to the statutory limits.

An individual doctor's expectation that personal assets are secure in return for paying the premiums required, (provided that liability falls within the statutory limits set by the Act), would be unfairly undermined if, because of a necessary administrative procedure, successful plaintiffs could execute on the assets of a health care provider, when plaintiffs failed to receive immediate payment of the judgment owed by the CAT Fund. In this case, the judgment entered April 22, 1988 required a payment by the Fund on December 31, 1988. We therefore hold that a successful plaintiff may not execute on the assets of a health care provider if that plaintiff is seeking to collect the remainder of the judgment for which the CAT Fund is liable before the specified time for payment has passed. *See,* 40 P.S. § 1301.701(e)(2).

■ However, the entry of a judgment on the verdict triggers the start of the waiting period for payment by the CAT Fund. In this case, the judgment entered April 22, 1988 required a payment by the fund on December 31, 1988. The taking of the appeal did not automatically eliminate the effect of the judgment nor postpone its payment. To avoid the necessity of paying a judgment while an appeal is pending requires the grant of a supersedeas. *See,* 42 Pa.C.S.A. 1701, Pa.R.A.P. The appeal is not an automatic supersedeas. *Cf.* 42 Pa.C.S.A. Rule 1731 Pa.R.A.P.

Here the plaintiffs did not seek payment until after the decision of the appellate court. In response to the plaintiffs' demand the fund argued that payment was not due until the end of December, 1989. This is a misreading of the statute which states that "all such claims shall be paid on or before December 31st following the August 31st by which they become final." 40 Pa.C.S.A. § 1301.701(e)(2). Finality as set forth in this section refers to when the judgment is entered and collectable. It is axiomatic that a judgment may be executed upon entry even if appealed absent supersedeas. Therefore, for payment purposes, it is final the date it is entered.

Therefore, because the CAT Fund failed to live up to its statutory obligation to pay the Tominellos after December 31, 1988, we hold that it was perfectly proper for the Tominellos to execute on that judgment any time after December 31, 1988 to satisfy the judgment of April 22, 1988.

■ While we hold that execution is proper following the stated time for payment set forth in the health care services Malpractice Act, we also believe that the balance sought by the statute namely, assuring continued delivery of health care, providing a fund for payment of claims, requiring the participation of all health care providers, protecting the assets of those providers and providing payment to injured claimants, can best be achieved by restricting execution to garnishment of the fund rather than attachment of assets.

Therefore, we hold that the entry of judgment on the verdict is the final judgment contemplated by the act for determining when payment by the fund is required. During this time, no execution can issue against the health care provider for sums to be paid by the fund. Absent a supersedeas, an appeal does not postpone the requirement of payment of a judgment. Further, we hold that while execution can issue for monies due from the fund on a judgment after the statutory time for payment has passed, it shall be limited to a garnishment proceeding against the fund.

As noted earlier, this court was notified by the Tominellos' post-argument submission that the CAT Fund paid them on December 29, 1989, but claim they are still owed interest on the amount withheld by the CAT Fund until that date. [Although it is generally true that judgment for the payment of money bears interest from "date of the verdict or award." 42 Pa.C.S. § 8101. *Sands v. Pennsylvania Insurance Guaranty Award*, 283 Pa.Super. 217, 228, 423 A.2d 1224 (1980), we do not believe should reach an issue which has neither been litigated, briefed or argued.] Therefore, we remand this case to the trial court to decide whether interest is owed, by whom it is owed, and for calculation of the amount if any.

Jurisdiction is relinquished.