616 A.2d 57

**Robert L. KING, Petitioner,**

**v.**

**Ralph C. BOETTCHER, Executor of the Estate of Patricia E. Boettcher, deceased; Pennsylvania Medical Society Liability Insurance Company, a corporation, and Pennsylvania Professional Medical Liability Catastrophic Loss Fund, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided Sept. 15, 1992.

M. Theresa Creagh, for petitioner.

Richard L. McMonigle, Jr., Ellen M. Viakley and Edward D. Klym, for respondents.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

Before us in our original jurisdiction are cross motions for judgment on the pleadings filed by Respondent Ralph C. Boettcher, executor of the estate of Petitioner Patricia E. Boettcher, and Robert L. King, M.D. filed in connection with a "Complaint for Declaratory Judgment" filed by Dr. King. Also before us are motions for summary judgment filed by the Pennsylvania Medical Society Liability Insurance Company (PMSLIC) and the Pennsylvania Medical Professional Liability Catastrophe Loss Fund (CAT Fund or Fund).

The pertinent facts are not in dispute. On March 30, 1987 a jury rendered a verdict in favor of Boettcher and against Dr. King in a case involving a lawsuit filed by Boettcher over the wrongful death of his wife, Patricia E. Boettcher, stemming from certain medical procedures performed by Dr. King. The jury awarded $165,000 to Boettcher in the survival action and $335,000 to Patricia Boettcher's estate in the wrongful death action. At the relevant time PMSLIC was Dr. King's medical professional liability insurer and provided him with basic malpractice coverage of $100,000. The CAT Fund is a statutory creature which administers a continuing fund for payment of awards rendered against health care providers entitled to participate in the CAT Fund as a consequence of a successful professional liability claim to the extent the judgment exceeds the provider's basic coverage at the time of the incident. It is undisputed that Dr. King was entitled to participate in the CAT Fund.

Subsequent to the jury verdict, Dr. King filed a motion for post-trial relief which was denied. Boettcher filed a petition for delay damages which was also denied. Cross appeals to the Superior Court ensued and that Court, on July 24, 1989, affirmed the denial of post-trial motions but reversed and remanded on the issue of delay damages. Thereafter, Dr. King filed an allocatur petition with the Supreme Court which was denied on December 18, 1989.

On April 3, 1990 delay damages were awarded to Boettcher based upon a stipulation of the parties and the verdicts were molded by the trial court as follows:

| | | |
|---|---|---|
| (a) | Survival action | $222,708.18 |
| (b) | Wrongful death action | $452,165.09 |
| | **Total** | **$674,873.27** |

On December 21, 1989 PMSLIC made a payment of $265,-054.32 to Boettcher which consisted of the following allocations:

| | | |
|---|---|---|
| (a) | Verdict-coverage | $100,000.00 |
| (b) | Delay–Damages | 54,390.82 |
| (c) | Post–Judgment Interest (3/30/87 to 12/21/89 @ 6% per annum) | $110,655.50 |
| | **Total** | **$265,054.32[1]** |

This payment represented PMSLIC's coverage of $100,000 in reduction of the total verdict of $500,000 ($165,000 + $335,000) and its pro rata portion of delay damages and post-judgment interest from the date of the verdict to the date of payment.[2]

On December 31, 1990, the CAT Fund paid $520,475 to Boettcher; this consisted of the remainder of the underlying verdict and delay damages.[3] In a letter accompanying the check the CAT Fund advised Boettcher that the check was

1. We quoted these numbers from the pleadings. Our addition indicates that the figures stated actually total $265.046.32.

2. The CAT Fund claims no knowledge of the terms of PMSLIC's settlement, but since the legal issue here does not depend upon exact numbers, the CAT Fund's denial of the allegations quoted above on the basis that it was not a party to the stipulations are of no moment. Further, its own motion for summary judgment indicates that it does not believe any *material* facts are in dispute.

3. The mathematics in this calculation also seem to be slightly askew; $674,873.27 less $154,390.82 would be $520,482.45.

being offered in full satisfaction of all claims against Dr. King, PMSLIC and the CAT Fund and that by negotiating the check Boettcher acknowledged that the claim had been satisfied. Boettcher was also requested to mark the judgment satisfied. Boettcher's counsel replied by letter to the CAT Fund on January 24, 1991 in pertinent part as follows:

> On behalf of the plaintiff, it is hereby stated that the check is not accepted as payment in full and final satisfaction of all claims, nor will the acceptance, endorsement or negotiation of the check represent an acknowledgment that all claims have been fully and completely satisfied. To the contrary, the plaintiff accepts the check without waiving his claim to post-judgment interest from December 21, 1989 through December 31, 1990, the date the check was tendered. That amount is $32,084.03.

The question we are asked to decide is whether Boettcher is entitled to interest on the excess verdict over $100,000, and if so, who is responsible for its payment—Dr. King, PMSLIC or the CAT Fund.

Dr. King in his complaint for declaratory judgment and his motion for judgment on the pleadings asks that this Court make a determination that no post-judgment interest is due and that Boettcher be directed to mark the judgment satisfied. Alternatively, Dr. King requests that if interest is due we declare the CAT Fund to be the responsible party. Boettcher in his motion requests us to declare that interest is due, but he does not specify which party should be responsible for its payment, just so long as one of them is held responsible.

PMSLIC, in its motion for summary judgment, has also sought a declaration that no further interest is due and alternatively, that if such interest is due it is the responsibility of the CAT Fund to pay it. It maintains that it has already paid its primary coverage, its share of the delay damages, and *it also has paid post-judgment interest.* Finally, the CAT Fund in its motion for summary judgment contends that Boettcher's claim for interest must be denied "because under Pennsylvania law, a medical malpractice plaintiff is not entitled to recover post-judgment interest on amounts timely paid

by the Fund in accordance with the statutory mandate of the Health Care Services Malpractice Act." Alternatively, it contends that Boettcher's negotiation of the CAT Fund check constitutes an accord and satisfaction, and as a further alternative, if interest is owed it is, as matter of law, not owed by the CAT Fund.[4]

The general principle of law is that a motion for judgment on the pleadings may be granted only where the case is free from doubt and where a trial would be a fruitless exercise. *Gallo v. J.C. Penney Casualty Insurance Co.,* 328 Pa.Superior Ct. 267, 476 A.2d 1322 (1984). All of the opposing parties well-pled allegations are viewed as true and only those facts specifically admitted may be considered against him. *Id.* Similarly, when ruling on a motion for summary judgment, we must accept as true all-well pled facts, but resolve any doubts as to the existence of a material fact against the non-moving party. *First Pennsylvania Bank, N.A. v. Triester,* 251 Pa.Superior Ct. 372, 380 A.2d 826 (1977). No party here alleges such a dispute exists with regard to a material fact and our review of the pleadings has disclosed no such impediment to the determination of the legal issues presented. Accordingly, we proceed to consider the legal issues: is interest due, and then, if interest is due, which party is responsible?

■ Section 8101 of the Judicial Code, 42 Pa.C.S. § 8101, provides:

> Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

This provision grants a creditor interest as a matter of right unless another statute provides to the contrary. The only law which it is suggested is contrary is the Health Care Services

---

**4.** The CAT Fund does not suggest who owes the money, just that *it* does not.

Malpractice Act[5] (Act) which the CAT Fund itself admits is silent on the question of post-judgment interest.

The CAT Fund contends, however, that absent express statutory language, it has no power to pay post-judgment interest. It also argues that since it is self-sustaining (that is, it is not supported by tax revenues) compelling it to pay such interest would run counter to its duties. Further, it maintains that the Act essentially represents a compromise between health care providers and malpractice plaintiffs in medical malpractice litigation, and, that as a trade off for stability and certainty of payment, plaintiffs should be expected to forego interest payments from the Fund which payments would jeopardize the CAT Fund's operations and strain its resources. These last two arguments are, of course, matters of policy, and while they might be relevant were we faced with an ambiguous statute, that is not the case presented here. With regard to its contention that express statutory authority is needed before the CAT Fund is required to pay interest, such authority exists in Section 8101 of the Judicial Code. There is no requirement that that statutory authority must be within the ambit of the Health Care Services Malpractice Act itself.

The CAT Fund also cites *Tominello v. Janeway,* 392 Pa.Superior Ct. 404, 573 A.2d 218 (1990), as precedent for the proposition that it need not pay post-judgment interest. That case, however, is most noteworthy for our purposes because it *expressly acknowledged that the issue was left undecided* and instead, the case was remanded for the trial court to do so.[6]

In *Tominello* the Tominellos sued Dr. Janeway and the jury verdict awarded them $250,000 plus delay damages. Following post-trial motions, delay damages of $115,041.00 were

**5.** Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §§ 1301.101–1301.1006.

**6.** According to the parties there has been no disposition of that issue on remand to the trial court. Even if such a decision had been rendered, however, we are not bound by a ruling of a court of common pleas on a pure issue of law.

added to the jury verdict. The Superior Court affirmed the judgment on April 11, 1989. On April 26, 1989 PMSLIC (who was also the primary carrier in that case) paid the limits of its primary coverage ($100,000.00) and a few days later paid its pro rata share of delay damages and post-judgment interest (the same as occurred here). The Tominellos, on April 28, 1989, filed a praecipe for writ of execution against Dr. Janeway who then filed a motion for a protective order and stay of execution claiming that the remaining amount due would be paid by the CAT Fund on December 31, 1989 under the provisions of the Act and that the Tominellos could not execute on his assets before that date.[7] The trial court disagreed and Dr. Janeway appealed. The Superior Court reversed, holding that a successful plaintiff cannot execute on a doctor's assets prior to the December 31 payment date set forth in Section 701 of the Act. It recognized the administrative logistics of having one payment date for all claims, and opined that in exchange for the guarantee of payment claimants would have to wait until the statutory date on which the check could be issued. The opinion, however, did not go further and decide whether the requirement that the plaintiffs wait excused the accrual of, and the CAT Fund's responsibility

7. According to Section 701 of the Act, 40 P.S. § 1301.701, the Fund is empowered to levy an annual surcharge on health care providers in order to remain self-sustaining and it also, if necessary, can levy emergency surcharges. In addition, Section 701(e)(2) provides as follows:

Health care providers having approved self-insurance plans shall be surcharged an amount equal to the surcharge imposed on a health care provider of like class, size, risk and kind as determined by the director. The fund and all income from the fund shall be held in trust, deposited in a segregated account, invested and reinvested by the director, and shall not become a part of the General Fund of the Commonwealth. All claims shall be computed on August 31, 1981 for all claims which become final between January 1, 1981 and August 31, 1981 and annually thereafter on August 31 for all claims which became final between that date and September 1 of the preceding year. *All such claims shall be paid on or before December 31* following the August 31 by which they became final, as provided above. All claims which become final between January 1, 1980 and the effective date of this amendatory act shall be computed on the effective date of this amendatory act and shall be paid on or before December 31, 1980. (Emphasis added.)

to pay, post-judgment interest.[8] We now hold that it does not. Had the legislature wished to exempt the Fund from Section 8101 of the Judicial Code·it could have expressly done so. Moreover, the CAT Fund's power to levy an emergency surcharge empowers it to provide for situations just as this one.

 Although we hold that the CAT Fund can be liable for post-judgment interest, there remains the question of whether the defense of accord and satisfaction applies in this case to excuse liability. The elements of accord and satisfaction are: (1) a disputed debt (2) a clear and unequivocal offer of payment in full satisfaction and (3) acceptance and retention of payment by the offeree. *Law v. Mackie,* 373 Pa. 212, 95 A.2d 656 (1953). It has been held, however, that partial payment of a *liquidated* debt does not constitute an accord and satisfaction because in such a situation the creditor has given no consideration. *Nies v. Metropolitan Casualty Insurance Co. of New York,* 317 Pa. 545, 177 A. 754 (1935). As *Nies* explained:

"The reason that payment of money in discharge of a larger amount presently due is not a good accord and satisfaction ... is that the debtor gives nothing he was not already bound to give, and the creditor receives nothing he is not already entitled to receive, and there is therefore no consid-

**8.** The Superior Court in *Tominello* noted the fact that the specific issue of the responsibility for interest was not before the Court as follows:

The parties, in post-argument submissions, notified this court that the CAT Fund had paid the Tominellos as of December 29, 1989. The question whether this appeal is now moot has been raised because if an event occurs during the pendency of an appeal which renders it impossible for the appellate court to grant relief, the appeal will be dismissed. Commonwealth v. Smith, 336 Pa.Super. 636, 640, 486 A.2d 445 (1984). However, because we believe that a question still remains whether the Tominellos are due interest on the CAT fund's share of the payment from the time PMSLIC paid Dr. Janeway until December 29, 1989, and because this case involves issues of public importance that are capable of repetition likely to evade review if the normal rules on mootness are applied, Commonwealth v. Joint Bargaining Committee for the Pennsylvania Social Services Union, 484 Pa. 175, 179, 398 A.2d 1001, 1003 (1979), we will reach the merits of this appeal [regarding execution].

*Tominello,* 392 Pa.Superior Ct. at 407, n. 2, 573 A.2d at 220 n. 2.

eration." That has been the law in this State from at least as far back as *Lowrie v. Verner,* (1834) 3 Watts, 317, 319 (1834), and so far as we are aware has never been seriously doubted since then.

*Id.,* 317 Pa. at 549, 177 A. at 756 (quoting *Fowler v. Smith,* 153 Pa. 639, 645, 25 A. 744, 746 (1893)). (Material omitted from *Nies* quotation). *See also Corbin on Contracts,* § 1281 (1962). Accordingly, the defense of accord and satisfaction does not apply in this case.

 Finally, the CAT Fund contends that even if it is liable it cannot be held responsible for any post-judgment interest prior to April 3, 1990 (when the issue of delay damages was resolved) because under this Court's ruling in *Dougherty v. Catastrophe Loss Fund,* 106 Pa. Commonwealth Ct. 424, 526 A.2d 1241 (1987), until that time there was no final judgment and so the Fund's duty to pay had not yet arisen. While it is true that the total extent of liability was not known until the delay damages were computed, the substantive right to those delay damages, and consequently, to post-judgment interest, had arisen earlier. *Dougherty* merely held that the CAT Fund need not make *payment* until delay damages are known in order to avoid piecemeal litigation of claims. Here, no such problem exists; the delay damages are known and interest can be immediately calculated. We thus reject the CAT Fund's argument.

Finally, while the CAT Fund contends it is not the liable party in any event, it does not suggest who is. Under *Tominello* it could not be Dr. King and the CAT Fund so admits. That leaves PMSLIC; and, of course, PMSLIC has already paid its full share of the debt including interest, and it cannot be responsible for more than that. We further reject outright any other notion that Boettcher should not be made whole because the clear intention of the legislature is to the contrary.

Accordingly, having concluded that interest is due and that the CAT Fund is liable for that interest, we grant the motions for judgment on the pleadings of King and Boettcher and

500

PMSLIC's motion for summary judgment and deny the CAT Fund's motion for summary judgment.

## ORDER

NOW, September 15, 1992, the motions for judgment on the pleadings of Robert L. King (his alternative pleading) and Ralph C. Boettcher are hereby granted. It is further ordered that the motion for summary judgment filed by the Pennsylvania Medical Society Liability Insurance Company (also in the alternative) is granted and that the motion for summary judgment filed by the Pennsylvania Professional Medical Liability Catastrophe Loss Fund is denied.