INDEPENDENT OIL AND GAS ASSO-
CIATION OF PENNSYLVANIA, Hess
Energy, Inc., TXU Energy Services
and the New Power Company, Enron
Energy Services, Inc., UGI Energy
Services, Inc., PG Energy Services,
Inc., Ashland, Inc., MidAmerican Nat-
ural Resources, Inc., Agway Energy
Services–PA, Inc., Energy East Solu-
tions, Inc., Petitioners,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Office of Consumer
Advocate and Office of Small Busi-
ness Advocate, Respondents.

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.

Decided July 12, 2002.

Daniel Clearfield, Harrisburg, for petitioners.

Lawrence F. Barth, Harrisburg, for respondent PUC.

Christine Maloni Hoover, Harrisburg, for respondent, Office of Consumer Advocate

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.[1]

Several natural gas suppliers (collectively NGSs) [2] have filed a petition for review in this Court's original jurisdiction in the nature of a complaint for declaratory judgment and a writ of prohibition against the Public Utility Commission (Commission or PUC) and Office of Consumer Advocate (OCA) seeking to enjoin the PUC from classifying the NGSs as "public utilities" and charging them a regulatory assessment fee. The NGSs have also filed an Application for Summary Relief pursuant to Pa. R.A.P. 1532(b). We grant the Application for Summary Relief.

On June 22, 2001, the Natural Gas Choice and Competition Act (Act), 66 Pa. C.S. §§ 2201–2212, was enacted. The Act permitted retail consumers in Pennsylvania to purchase gas supplied from indepen-

---

**1.** On May 15, 2002, we issued an opinion in this case granting the Application for Summary Relief (Application) filed by the NGSs. Thereafter, the NGSs filed an Application for Clarification and Reconsideration. On June 14, 2002, we vacated our previous decision and granted the Application for the limited purpose of addressing whether the NGSs are entitled to pre-judgment and post-judgment interest. We now issue this opinion granting the NGSs post-judgment interest but denying them pre-judgment interest for the reasons set forth below.

**2.** The natural gas suppliers in this matter are Independent Oil and Gas Association of Pennsylvania, Hess Energy, Inc., TXU Energy Services and the New Power Company, Enron Energy Services, Inc., UGI Energy Services, Inc., PG Energy Services, Inc., Ashland, Inc., Mid–American Natural Resources, Inc., Agway Energy Services–PA, Inc., Energy East Solutions, Inc. (Petitioner's attorney stated at oral argument on the PUC's and OCA's preliminary objections that the effect of the Enron bankruptcy filing is not an issue here.)

dent natural gas suppliers while continuing to receive distribution services from local distribution companies. On August 9, 2001, the PUC determined that the NGSs were subject to a regulatory assessment for Fiscal Year 2001–2002, pursuant to Section 510.[3] On August 24, 2001, the NGSs petitioned this Court in the nature of a complaint for declaratory judgment under the Declaratory Judgments Act, 42 Pa.C.S. § 7532, to exercise its original jurisdiction and declare that the Commission does not have the statutory authority to assess the NGSs for regulatory expenses pursuant to Section 510 of the Public Utility Code (Code), 66 Pa.C.S. § 510. The NGSs's complaint also asked this Court to enter a writ of prohibition preventing the Commission from subjecting the NGSs to the Commission's assessment authority including requiring the NGSs to pay assessments for Fiscal Year 2001–2002 and to pursue inadequate statutory remedies.[4]

The PUC and OCA filed preliminary objections challenging the validity of the NGSs's action and seeking dismissal of the petition based on a lack of jurisdiction, insufficient specificity in the complaint and previously filed objections pending before the Commission.

On December 4, 2001, argument was held before this Court. The PUC and the OCA contended that this Court lacked subject matter jurisdiction because the Commission's action was not final since the NGSs had not exhausted their administrative remedies as mandated by Section 510 of the Code.[5] Because the application of Section 510 is clearly limited to public utilities, it was necessary for this Court to determine whether or not the NGSs are public utilities.[6] The Natural Gas Choice and Competition Act defines a "natural gas distribution company" as:

A public utility or city natural gas distribution operation that provides natural

---

3. The PUC, OCA and Office of the Small Business Advocate are funded through a system of assessments wherein those entities that are regulated by the PUC, *i.e.*, public utilities, must pay an annual share of the agency's operating expenses. The procedure for determining the amount of the assessment is found in Sections 510 and 511 of the Public Utility Code.

4. The NGSs also filed an application for special relief in the form of a preliminary injunction but have since withdrawn it.

5. Section 510(d) states, in relevant part, "Suits by public utilities.—No suit or proceeding shall be maintained in any court for the purpose of restraining or in anywise delaying the collection or payment of any assessment made."

   Section 510(e) states, in relevant part, "The procedure in this section [Section 510] providing for the determination of the lawfulness of assessments and the recovery back [sic] of payments made pursuant to such assessment shall be exclusive of all other remedies and procedures."

6. Section 102 of the Public Utility Code defines a "public utility" as:

(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:

(i) Producing, generating, transmitting, distributing or furnishing natural or artificial gas ... for the production of light, heat, or power to or for the public for compensation.

. . .

(iv) Transporting or conveying natural or artificial gas, crude oil, gasoline, or petroleum products, materials for refrigeration, or oxygen or nitrogen, or other fluid substance, by pipeline or conduit, for the public for compensation.

. . . .

(2) The term does not include:

(i) Any person or corporation, not otherwise a public utility, who or which furnishes service only to himself or itself.

. . .

(iii) Any producer of natural gas not engaged in distributing such gas directly to the public for compensation.

. . . .

66 Pa.C.S. § 102.

gas distribution services and which may provide natural gas supply services and other services.

. . . .

66 Pa.C.S. § 2202. A "natural gas supplier" is defined as:

An entity other than a natural gas distribution company, but including natural gas distribution company marketing affiliates, which provides natural gas supply services to retail gas customers utilizing the jurisdictional facilities of a natural gas distribution company.

. . . .

The term excludes an entity to the extent that it provides free gas to end—users under the terms of an oil or gas lease. Notwithstanding any other provision of this title [Title 66, Public Utilities], *a natural gas supplier that is not a natural gas distribution company is not a public utility as defined in section 102 (relating to definitions) [66 Pa.C.S. § 102] to the extent that the natural gas supplier is utilizing the jurisdictional distribution facilities of a natural gas distribution company or is providing other services authorized by the commission.*

*Id.* (emphasis added).

After applying the above-cited law to the facts of this case, we determined that:

Clearly, the General Assembly has excluded natural gas suppliers from the definition of "public utility" when the NGSs use the distribution services of natural gas distribution companies. This exclusion is unambiguous and, as such, we must give force and effect to the plain meaning of the statute. *See*

*Oberneder v. Link Computer Corp.*, 548 Pa. 201, 206, 696 A.2d 148, 150 (1997) (holding that when the words of a statute are free from ambiguity, its letter is not to be disregarded under the pretext of pursuing its spirit). Further:

It is for the legislature, not the PUC or this court to determine what business activity comes within the purview of the PUC. Because the legislature has determined [which] businesses . . . are not public utilities, . . . we are constrained to determine that they are not subject to regulation by the PUC. If the legislature determines that such businesses should, in fact, be regulated by the PUC, it can always amend the Public Utility Code to that effect.

*Bethlehem Steel Corp. v. Pennsylvania Public Utility Commission*, 552 Pa. 134, 144, 713 A.2d 1110, 1115 (1998). We conclude that the NGSs are not a "public utility" under Section 510. Consequently, the NGSs are not mandated to comply with the administrative procedure therein, *i.e.*, Section 510 is not an exclusive remedy to non-public utilities.

*Independent Oil and Gas Association of Pennsylvania v. Pennsylvania Public Utility Commission*, 789 A.2d 851, 855 (Pa.Cmwlth.2002) (hereinafter *Independent Oil I*). Accordingly, we overruled the preliminary objections of the PUC and the OCA and, in accordance with Pa. R.C.P. No. 1028(d), ordered them to file an Answer to this matter within 20 days.[7]

■■■ Initially, we note that in this case, the PUC and OCA filed preliminary objections under Pa. R.C.P. No. 1028(a)(1)(3) and (6).[8] "[W]hen ruling

---

7. Pa. R.C.P. No. 1228(d) provides that:

(d) If the preliminary objections are overruled, the objecting party shall have the right to plead over within twenty days after notice

of the order or within such other time as the court shall fix.

8. Pa. R.C.P. No. 1028 provides, in relevant part, that:

upon preliminary objections, the Court must accept as true all well-pleaded allegations of material fact as well as all reasonable inferences deducible therefrom. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth. 1995); *Rodgers v. Pennsylvania Department of Corrections,* 659 A.2d 63 (Pa. Cmwlth.1995). The Court is not required to accept as true any conclusions of law or expressions of opinion. *Envirotest.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Allegheny Sportsmen's League v. Ridge,* 790 A.2d 350, 354 (Pa.Cmwlth. 2002).

On January 28, 2002, both the PUC and the OCA filed Answers to the Petition for Review filed by the NGSs in accordance with Pa. R.C.P. No. 1028(d). On March 4, 2002, the NGSs filed an Application for Summary Relief (Application) seeking 1) a determination that this Court's January 7, 2002 order was final and appealable when entered pursuant to 42 Pa.C.S. § 7532 and Pa. R.A.P. 341(b)(2) and is now unappealable, 2) judgment to the NGSs in the amount of their payments to the PUC for the 2001–2002 fiscal year with prejudgment and post-judgment interest, 3) a writ prohibiting the PUC from issuing regulatory assessments to NGSs under Section 510 of the Code in the future and 4) an award of attorney's fees. The NGSs also filed an motion for expedited consideration of their Application, which was granted on March 6, 2002. Thereafter, oral argument was held on April 10, 2002.

█ Pa. R.A.P. 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate *or original matter* the court may on application enter judgment if the right of the applicant thereto is clear." (emphasis added). Thus, when addressing an application for summary relief, this Court must determine "whether it is clear from the undisputed facts that either party has a clear right to the relief requested." *Bell Atlantic–Pennsylvania, Inc. v. Turnpike Commission,* 703 A.2d 589, 590 (Pa.Cmwlth.1997).

█ Pursuant to Pa. R.A.P. 341(b), a final order is any order that:

(1) disposes of all claims and of all parties; or

(2) any order that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subdivision (c) of this rule.

"A pivotal consideration in determining whether an order is final and appealable is whether the plaintiff aggrieved by it has, for purposes of a particular action, been put "out of court" ..." *Sweener v. First Baptist Church of Emporium, Pennsylva-*

(a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

  (1) lack of jurisdiction over the subject matter of the action or the person of the defendant, improper venue or improper form or service of a writ of summons or a complaint;

  ...

  (3) insufficient specificity in a pleading;

  ...

  (6) pendency of a prior action or agreement for alternative dispute resolution.

  ...

*Note: Preliminary objections raising an issue under subdivision (a)(1), (5) or (6) cannot be determined from facts of record. In such a case, the preliminary objections must be endorsed with a notice to plead or no response will be required under Rule 1029(d).*

*However, preliminary objections raising an issue under subdivision (a)(2), (3) or (4) may be determined from facts of record so that further evidence is not required. Consult local rules which may contain supplementary procedures governing the filing and disposition of preliminary objections.*

*nia,* 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987). Additionally, 42 Pa.C.S. § 7532 of the Declaratory Judgments Act provides that:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. **The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.**

(emphasis added).

In their Answers, the PUC and OCA make essentially the same arguments that they made before this Court on their preliminary objections. Initially, they argue that this Court did not make a final determination as to whether the NGSs are subject to regulatory assessment under Section 510 but rather only determined that the NGSs do not have to follow the procedures set forth in Section 510 to challenge their assessment because they are not "public utilities". The PUC and OCA argue that the ultimate issue, whether the PUC may assess the NGSs a regulatory assessment fee, has not yet been decided by this Court or sufficiently argued by the parties.

Specifically, the PUC argues that it can subject the NGSs to regulatory assessment under Section 510. The PUC contends that purpose of Section 2202 is to provide meaning for terms used in the Act. However, its purpose is not to establish the total bounds of the PUC's authority over NGSs. In support of its argument, the PUC cites Section 2208(e) of the Act, which provides that:

> (e) Form of regulation of natural gas suppliers.—Except where a natural gas supplier serves as a supplier of last resort, **the commission may forbear from extending its regulation of natural gas suppliers beyond licensing, bonding, reliability and consumer services and protections,** including all applicable portions of 52 Pa.Code Ch. 56 (relating to standards and billing practices for residential utility service). Subject to the provisions of section 2207 (relating to obligation to serve) . . .

66 Pa.C.S. § 2208(e).

Because the Legislature has given the PUC the express authority to regulate NGSs and also the discretion to forbear from extending its regulation, the PUC argues that it logically follows that it may choose *not* to forbear from extending its regulation of NGSs. The PUC contends that it would be absurd for the Legislature to impose upon it the authority and obligation to regulation NGSs with regard to licensing, bonding, reliability and consumer services but then exclude the NGSs from paying assessments fees related to the cost of carrying out that statutorily mandated regulation.

In its Answer and demand for a hearing, the PUC attached the affidavit of the Mitchell A. Miller, who is the director of the PUC's Bureau of Consumer Services (BCS). The affidavit states that, since the passage of the Act, the BCS has had to devote "a significant amount of employee time and resources to matters concerning natural gas suppliers" including review and approval of all NGS written disclosure agreements as part of the licensing process or proposed revisions. Additionally, the BCS has devoted staff time to the review of NGS notices of contract revisions, renewals and cancellation. The BCS has also "had to establish a separate competition unit to handle consumer complaints concerning ... billing disputes, credit and collection issues, terms and con-

ditions of supplier contracts, allegations of unauthorized switches in a customer's supplier . . . and misleading or deceptive sales activities. Since 1999, the BCS has received, investigated and responded to 988 NGS-related informal complaints . . .". (Affidavit of Mitchell A. Miller, pp. 1–2).

In support of its argument that this Court made a declaration that resolves the question of whether NGSs must pay a regulatory assessment fee pursuant to Section 510, the NGSs cite our Supreme Court's decision in *Nationwide Mutual Insurance Company v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000). In *Nationwide*, the Superior Court read Section 7532 as requiring a court to make explicit in its order whether it is entering a declaratory judgment in favor of a particular party. In reversing the Superior Court, the Supreme Court stated that Section 7532 contains no such specific requirement. Rather, the Supreme Court held that if orders do "in fact affirmatively or negatively declare the rights of the parties, then they [constitute] immediately appealable orders pursuant to Pa. R.A.P. 341(b)(2)." *Id.* at 602, 763 A.2d at 817. In *Nationwide*, the order was affirmative in effect because it sustained a party's preliminary objections and also negative in effect because it declared the rights and duties of the parties of the law adversely with respect to one party. Thus, the order was final pursuant to Section 7532.

In the case *sub judice*, the NGSs assert that this Court affirmatively declared in *Independent Oil I* that the NGSs are not "public utilities" by overruling the preliminary objections of the PUC and the OCA. Because only "public utilities" are subject to Section 510 regulatory assessment fees, the NGSs argues that our previous decision in this case resolved the ultimate issue in this case, i.e., not only whether the NGSs must follow the *procedures* in Section 510 to challenge their assessment, but also whether they are subject to regulatory assessment at all. At page eight of their reply brief, the NGSs state that "[t]he opposing parties' "parsing" the basis for their objection to subject matter jurisdiction into "procedural" and "substantive" components is a distinction without legal significance in this case. This argument ignores the fact that their "procedural" objection *required* the Court to decide the ultimate substantive issue in this matter: Their jurisdictional objection could have been sustained only if this Court determined that Section 510 *(b) through (e) applied to NGSs.*" (emphasis in original). The NGSs contend that when this Court dismissed the preliminary objections of the PUC and the OCA, this had a negative effect on those parties. Because this was the ultimate issue in this case, and it was decided in favor of the NGSs, they argue that this Court entered a final order under Section 7532. Essentially, the NGSs contend that this order was negative in form, by dismissing the preliminary objections, and affirmative in effect, by resolving the ultimate issue in favor of the NGSs.

The PUC and the OCA argue that the *Nationwide* case is not applicable here because in that case the Court granted demurrers, which is an allegation that the complaint does not set forth a cause of action upon which relief can be granted. In the case *sub judice*, however, the PUC and the OCA did not file demurrers but rather filed preliminary objections alleging that this Court does not have jurisdiction (Pa. R.C.P. No. 1028(a)(1)), that the complaint was not pled with sufficient specificity (1028(a)(3)) and that there were prior actions pending before the PUC (1028(a)(6)). Accordingly, the PUC and the OCA contend that *Nationwide* is distinguishable and inapplicable to this case.

In their reply brief, the NGSs also dispute the reasoning of the PUC and the OCA that it is absurd to conclude that the Legislature would intend for the PUC to have the authority to regulate them and yet exclude them from regulatory assessment under Section 510. Specifically, at pages 15 and 16 of their reply brief, the NGSs argue that "the PUC's argument is disingenuous in that the costs associated with regulating natural gas companies, including NGSs, will be passed on to all natural gas customers by inclusion in the non-competitive distribution rates of natural gas distribution companies ... the PUC's argument also ignores the fact that contract carriers and brokers, and municipal corporations serving beyond their corporate boundaries, are also not defined as "public utilities," yet the PUC regulates them and has never assessed them. Thus, the Legislature's decision to exclude NGSs from "public utility" status and the obligation to pay regulatory assessments is neither absurd or unusual."

■ Initially, we note that we believe it would be improper to conclude that our January 7, 2002 order in *Independent Oil I* was final and appealable when entered because we instructed the PUC and OCA to file Answers within 20 days. In fact, pursuant to Pa. R.C.P. No. 1028(d), this Court was *required* to allow the PUC and OCA to file an Answer. Therefore, by operation of the Rules of Civil Procedure, the PUC and the OCA were not put "out of court". Thus, we will not conclude that our January 7, 2002 order was final and appealable when entered. *See Chase Manhattan Mortgage Corporation v. Hodes*, 784 A.2d 144, 145 (Pa.Super.2001) ("an order overruling preliminary objections and directing the filing of an answer is interlocutory and unappealable.")

■ Having determined that our order in *Independent Oil I* was not final, we must now address the argument of the NGSs this Court should enter judgment in favor of the NGSs pursuant to Pa. R.A.P. 1532(b) because their right to that judgment is clear. First, we recognize that in *Independent Oil I*, when ruling upon the preliminary objections of the PUC and the OCA, we accepted as true all well-pleaded allegations of material fact as well as all reasonable inferences deducible from those facts. *See Envirotest.* We concluded that the NGSs were not required to appeal their assessments under the procedures set forth in Section 510. However, in order to determine whether the NGSs must follow the procedural aspects of Section 510, it was first inherently necessary for this Court to determine whether the NGSs were "public utilities" at all. We determined that the NGSs were not "public utilities" and thus not subject to the procedural aspects of Section 510.

We now hold that, because it is undisputed that Section 510 is the *only* procedure by which the PUC may charge "public utilities" a regulatory assessment fee, it logically follows if the NGSs are not procedurally required to appeal their assessment under Section 510, they are not subject to the substantive provisions of Section 510. In *Independent Oil I* as well as now the question before us is essentially one of statutory construction. The evidence presented by the PUC and the OCA regarding the resources they expend pursuant to Section 2208(e) in regulating the NGSs with regard to "licensing, bonding, reliability and consumer services" does not change the fact that the Legislature specifically exempted NGSs from the definition of "public utility" and only subjected "public utilities" to regulatory assessment under Section 510. We agree with the NGSs that when making a determination as to whether the NGSs are "public utilities" Section 510 cannot be

separated into its procedural and substantive aspects and analyzed separately. Rather, Section 510 must be analyzed as a whole because a determination as to whether the NGSs are subject to its procedural aspects requires that we determine whether they are also subject to its substantive aspects.

Furthermore, it is clear that when the Legislature intends to treat one group of energy suppliers differently and include them as a "public utility" for the purpose of regulatory assessment, it creates an exception for that purpose which it did for Electric Generation Suppliers (EGSs), but not for NGSs. This is evidenced by the fact that, as to EGSs, Section 102 provides that:

"Public utility."

(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:

(i) Producing, generating, transmitting, distributing or furnishing natural or artificial gas, **electricity,** or steam for the production of light, heat, or power to or for the public for compensation.

(2) The term does **not** include:

(i) Any person or corporation, not otherwise a public utility, who or which furnishes service only to himself or itself.

(vi) **Electric generation supplier companies,** *except* for the limited purposes as described in **sections 2809** [9] [of the Electricity Generation Customer

Choice and Competition Act (Electricity Competition Act)] (relating to requirements for electric generation suppliers) and 2810 (relating to revenue neutral reconciliation).

66 Pa.C.S. § 102.

Thus, EGSs *are* "public utilities", if only for limited purposes. Section 510(f) provides that "[i]t is the intent and purpose of this section that each public utility subject to this part shall advance to the [PUC] its reasonable share of the cost of administering this part ..." Because the EGSs are "public utilities", even if only for limited purposes under Section 102, they can be assessed a regulatory assessment fee under Section 510 for the cost of their regulation under Section 2209.

However, as to NGSs, Section 102 provides that:

(2) The term ["public utility"] does **not** include:

(iii) **Any producer of natural gas not engaged in distributing such gas** directly to the public for compensation.

However, Section 102 does *not* contain an exception to the statement that NGSs are not public utilities. Additionally, Section 2202 contains specific language stating that, under Section 102, NGSs are not public utilities. Thus, because there is no exception to the rule that NGSs are not public utilities, the PUC has no basis to assess the NGSs a regulatory assessment fee for the cost of their regulation under Section 2208, which is the section in the

---

**9.** Section 2809(e) of the Electricity Competition Act provides that:

(e) Form of regulation of **electric generation suppliers.**—The commission may forbear from applying requirements of this part which it determines are unnecessary due to competition among electric generation suppliers. In regulating the service of electric generation suppliers, the commission shall impose requirements necessary to

ensure that the present quality of service provided by electric utilities does not deteriorate, including assuring that adequate reserve margins of electric supply are maintained and assuring that 52 Pa.Code Ch. 56 (relating to standards and billing practices for residential utility service) are maintained.

66 Pa.C.S. § 2809(e).

Natural Gas Competition Act that is analogous to Section 2809 in the Electricity Competition Act is Section 2208. *See infra* p. 699. It is apparent that if the Legislature intended for the PUC to be able to recover these regulatory costs for NGSs, it would have created an exception to the rule that NGSs are not "public utilities" as they created an exception to the rule that EGSs are not "public utilities". However, the Legislature created no such exception and this Court may not infer one. Rather, the absence of such an exception leads us to conclude that the Legislature did not intend for NGSs to be subject to Section 510.

Accordingly, we now declare that the NGSs are not subject to regulatory assessment under Section 510 because they are not "public utilities" and therefore grant the Application for Summary Relief filed by the NGSs. The NGSs are entitled to have the money they have already paid in regulatory assessment fees returned to them in accordance with Section 510(d). The amount of this judgment is $711,907.00 as set forth in Exhibit Number One of their Application for Summary Relief. So as to dispel any confusion, this order is final and therefore appealable.

■■■ The NGSs also ask for an award of post-judgment and pre-judgment interest. In order to compel the payment of interest, express statutory authority is required. *See Woods v. Department of Transportation*, 163 Pa.Cmwlth. 379, 641 A.2d 633, 635 (1994). Section 510(d) provides that:

Any public utility making any such payment may, at any time within two years from the date of payment, sue the Commonwealth in an action at law to recover the amount paid, or any part thereof, upon the ground that the assessment was excessive, erroneous, unlawful, or invalid ... If it is finally determined in any such action that all or any part of the assessment for which payment was made under protest was excessive, erroneous, unlawful, or invalid, **the commission shall make a refund to the claimant out of the appropriation specified in section 511 as directed by the court.**

66 Pa.C.S. § 510(d) (emphasis added). Section 511 provides, in relevant part, that:

(a) Payment into General Fund.—All assessments and fees received, collected or recovered under this chapter shall be paid by the commission into the General Fund of the State Treasury through the Department of Revenue.

(b) Use and appropriation of funds.—All such assessments and fees, having been advanced by public utilities for the purpose of defraying the cost of administering this part, shall be held in trust solely for that purpose, and shall be earmarked for the use of, and annually appropriated to, the commission for disbursement solely for that purpose.

66 Pa.C.S. § 511(a) and (b). With regard to post-judgment interest, neither Section 510 nor Section 511 provides for the payment of post-judgment interest. However, Section 8101 of the Judicial Code provides that:

Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S. § 8101. Therefore, because Section 510 and Section 511 do not provide otherwise, Petitioners are entitled to post-judgment interest. *See also King v. Boettcher*, 150 Pa.Cmwlth. 490, 616 A.2d 57 (1992). Accordingly, Petitioners are entitled to simple interest at the rate of six percent on their award of $711,907.00 from

the date of this decision until the date of actual payment.

With regard to pre-judgment interest, it is well-settled that the Commonwealth is not liable to pay interest unless bound to do so by statute or by contract of its executive officers. *See Philadelphia v. Commonwealth*, 276 Pa. 12, 119 A. 723 (1923). Additionally, interest is a form of damages and allowed only when payment has been withheld after the duty of a party to discharge the debt has become fixed. *See Braig v. Pennsylvania State Employes' Retirement Board*, 682 A.2d 881, 886 (Pa.Cmwlth.1996).

Petitioners do not cite any compelling authority that would allow them to collect pre-judgment interest. Rather, Petitioners argue that equitable principles of fairness and justice compel an award of pre-judgment interest. We disagree. The only case Petitioners rely on is *Sack v. Feinman*, 495 Pa. 100, 432 A.2d 971 (1980), where a constructive trust was found to have been created on certain assets which the "trustee" deposited in her personal account rather than in the joint account as settlor intended, thereby abusing the confidential relationship for the "trustee's" sole benefit. The Chancellor awarded the funds to the "trustee's" sister with post-verdict interest but denied pre-judgment interest from the date of deposit. The Supreme Court reversed and remanded with instructions for the Chancellor to make findings because Section 8101 of the Judicial Code, 42 Pa.C.S. § 8101, does not bar pre-judgment interest because of the breach of fiduciary duty and in order to prevent unjust enrichment. The *Sack* case is clearly based on the equitable principle of preventing a *wrongdoer* from profiting

from the interest earned on *wrongful* investments and the restitution principle of preventing unjust enrichment, neither of which is present when a governmental agency attempts to perform its duty as it sees it.

Petitioners' argument for an award of pre-judgment interest based upon unjust enrichment again cites only the *Sack* case, which is inapplicable. The PUC clearly had a reasonable basis to attempt to levy an assessment involving the interpretation of a new statute setting forth a novel theory of deregulation and part of which actually included regulating another utility industry, the electrical industry. Nor was it unreasonable for them to demand assessment in advance for the services they were presumably going to render under their interpretation of the statute. Petitioners fail to carry their burden that the PUC has been unjustly enriched by some of the Petitioners who have paid their assessments.[10] As explained below, the decision of the PUC to assess Petitioners a regulatory assessment fee was a misinterpretation of a matter of first impression but in no way can it be compared to the tortious wrongdoing of the *Sack* case. Rather, Respondent's actions in assessing Petitioners a regulatory assessment fee occurred because of Section 510's apparent applicability to Petitioners and was therefore not clearly wrongful at the outset. *See Braig*, 682 A.2d at 887. Therefore, equity does not compel nor elicit an award of pre-judgment interest.

Additionally, Section 510 does not provide for the payment of pre-judgment interest. In fact, in no event are Petitioners entitled to pre-judgment interest under theories of equity or restitution as a mat-

---

10. Not all of the Petitioners have apparently paid assessments to the Commission, including Enron Energy Services and TXU Energy Services which were assessed almost $300,000 (PUC's Answer in Opposition to Petitioner's Application for Clarification and Reconsideration, p. 4).

ter of right. Furthermore, Respondents did not have a duty to return the regulatory fees assessed against Petitioners until we granted Petitioners' Application for Summary Relief. Accordingly, Petitioners would not be entitled to any interest prior to the date of this decision, which is the date that the duty of Respondents to return the regulatory assessment fees to the NGSs became fixed. *See Braig.*

■■■■ Finally, we must address the NGSs's request for attorney's fees. The NGSs assert that they are entitled to attorney's fees pursuant to Section 2503 of the Judicial Code, which provides that:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: ...

(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter....

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S. § 2503(6), (7) and (9). "An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature. An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty, or corruption." *Thunberg v. Strause,* 545 Pa. 607, 615, 682 A.2d 295, 299–300 (1996) (citations omitted).

First, there is absolutely no basis for this Court to order the OCA to pay the attorney's fees of the NGSs. The OCA did not commence any action against the NGSs. Rather, the NGSs filed a complaint with this Court stating that if the OCA failed to respond a default judgment could be entered against it. The OCA has absolutely no control of the PUC's decision to assess the NGSs and was only protecting its interests and property responding to the complaint of the NGSs.

With regard to the PUC, we also believe that it would be improper to order the PUC to pay the NGSs's attorney's fees. After passage of the Natural Gas Choice and Competition Act, which included provisions mandating that the PUC license NGSs, the PUC assessed the NGSs for the costs related to that regulation. The question of whether the PUC may assess NGSs was one of first impression and their decision to assess the NGSs was not clearly improper, nor is there any evidence that the PUC has done anything that is dilatory, obdurate, arbitrary, vexatious or in bad faith.

Accordingly, the request by the NGSs for attorney's fees is denied.

## *O R D E R*

AND NOW, July 12, 2002, the Application for Summary Relief filed by the NGSs is hereby GRANTED. We hereby declare that the NGSs are not subject to regulatory assessment under Section 510 of the Public Utility Code, 66 Pa.C.S. § 510 because they are not "public utilities". Furthermore, the NGSs are entitled to have the money they have already paid in regu-

latory assessment fees returned to them in accordance with Section 510(d). The amount of this judgment is $711,907.00 as set forth in Exhibit Number One of their Application for Summary Relief. The NGSs are also entitled to simple interest at the rate of six percent on their award of $711,907.00 from the date of this decision until the date of actual payment in accordance with Section 8101 of the Judicial Code, 42 Pa.C.S. § 8101. The NGSs are not entitled to pre-judgment interest on that award for the reasons set forth above. The NGSs's request for attorney's fees is hereby DENIED.