### In Re: SEPTA MVFRL INTEREST LITIGATION.

### Appeal of: Southeastern Pennsylvania Transportation Authority.

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2009.
Decided May 28, 2010.
Reargument En Banc Denied
July 21, 2010.

Michael A. Hamilton, Blue Bell, for appellant.

Ann M. Caldwell, Philadelphia, for appellee.

BEFORE: LEAVITT, Judge, KELLEY, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Before this Court is an appeal of the Southeastern Pennsylvania Transportation Authority (SEPTA) from the order of the Court of Common Pleas of Philadelphia County (trial court) dated December 17, 2008 that granted a Motion to Partially Lift the Stay Entered October 25, 2000 filed by Appellees, a Medical Provider Class (Providers). The trial court granted Providers' Motion for Partial Summary Judgment finding that SEPTA is liable for interest on "overdue" bills under the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7. The trial court denied SEPTA's Cross–Motion

for Partial Summary Judgment and found the stay shall remain in effect in regard to the remaining issues in the parties' litigation that are not relevant to this appeal. The trial court certified its order as a Final Order and made the express determination that an immediate appeal would facilitate resolution of the entire case. Upon review, we affirm.

Section 1711 of the MVFRL, located in subchapter B, provides as follows:

(a) MEDICAL BENEFIT.—An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title . . . *shall* include coverage providing a medical benefit in the amount of $ 5,000.

MINIMUM POLICY.—All insurers subject to this chapter shall make available for purchase a motor vehicle insurance policy which contains only the minimum requirements of financial responsibility and medical benefits as provided for in this chapter. (Emphasis added).

75 Pa.C.S. § 1711.

Section 1716 of the MVFRL, also located within subchapter B, reads as follows:

Benefits are overdue if not paid within 30 days after the *insurer* receives reasonable proof of the amount of the benefits . . . Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due . . . (Emphasis added).

75 Pa.C.S. § 1716.

The term "insurer" is defined as a "motor vehicle liability insurer subject to the requirements of this chapter." 75 Pa.C.S. § 1702. That same section defines the term "self-insurer" as an entity providing

benefits and qualified in the manner set forth in section 1787 (relating to self-insurance). *Id.* Section 1787 of the MVFRL provides:

(a) GENERAL RULE.—Self-insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, deposits, resources or commitments exist such as will satisfy the department that the self-insurer will:

(1) Provide the benefits required by section 1711 (relating to required benefits), *subject to the provisions of Subchapter B* (relating to motor vehicle liability insurance first party benefits), except the additional benefits and limits provided in sections 1712 (relating to availability of benefits) and 1715 (relating to availability of adequate limits) . . . (Emphasis added).

75 Pa.C.S. § 1787.

■■■ SEPTA argues on appeal that it is not liable for interest because no provision of the MVFRL specifically authorizes an award of interest against a Commonwealth agency, that Section 1716 of the MVFRL that calls for interest to be provided on "overdue" payments is applicable only to "insurers," and that it does not meet the definition of an "insurer."[1]

SEPTA further contends that it is not feasible for it to comply with Section 1716's directive that medical bills be paid within thirty days of receipt and that, therefore, it cannot be bound to pay interest on "overdue" benefits.[2]

■■■ The Commonwealth is not liable for interest except where expressly or by reasonable construction of a contract or statute, it is placed in the position of liability. *Summit House Condominium v. Commonwealth,* 514 Pa. 221, 523 A.2d 333 (1987); *Purdy's Estate,* 447 Pa. 439, 291 A.2d 93 (1972); *Smolow v. Hafer,* 867 A.2d 767 (Pa.Cmwlth.2005). The Pennsylvania Supreme Court recognized the rationale for this general rule eighty years ago when it stated:

The theory on which interest is allowed, except in cases of contract to pay interest, is that it is damages for delay or default in payment by the debtor, measured by a rate per cent. The State is not liable to pay interest on its debts unless bound by statute or by contract of its executive officers. The government is presumed to be always ready to pay, and it would be against public policy to declare it otherwise. . . .

---

1. Providers contend that SEPTA waived the issue that it is not liable for interest because the Legislature has not expressly determined that governmental entities must pay interest under the MVFRL. According to Providers, SEPTA only argued that it was not an "insurer" within the meaning of 1716 of the MVFRL and that for various policy reasons it should be excluded from any requirement to pay interest. It is acknowledged that an issue is waived unless it is preserved at every stage of the proceedings. *Lebanon Valley Brethren Home v. Workers' Compensation Appeal Board (Flammer),* 948 A.2d 185, 188 (Pa.Cmwlth. 2008). Providers' contention appears to have merit when reviewing the documentary evidence submitted below. This may be, however, an argument over semantics inasmuch as

evaluating whether SEPTA is deemed an "insurer" under Section 1716 of the MVFRL, whereupon that Section indicates that "insurers" are responsible for interest on overdue benefits, we are essentially required to consider whether the Legislature has expressly provided that SEPTA, as a governmental entity, is liable for interest under the MVFRL.

2. Because the issues before this Court are purely questions of law, our review is plenary. *Safe Auto Ins. Co. v. Sch. Dist. of Phila.,* 872 A.2d 247 (Pa.Cmwlth.2005). We note that, in general, summary judgment is proper where there are no genuine issues of material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Id.*

*Philadelphia v. Commonwealth,* 276 Pa. 12, 14, 119 A. 723, 723 (1923).

There is no requirement that the statutory authority be within the ambit of the specific act under review. *See King v. Boettcher,* 150 Pa.Cmwlth. 490, 616 A.2d 57 (1992)(holding that the CAT Fund can be liable for post-judgment interest even though the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §§ 1301.101– 1301.1006 (repealed), was silent on the question of post-judgment interest because authority exists in Section 8101 of the Judicial Code); *see also Woods v. Department of Transp.,* 163 Pa.Cmwlth. 379, 641 A.2d 633 (1994)(holding the Judicial Code provides statutory authority for imposition of post-judgment interest against the Pennsylvania Department of Transportation (PennDOT)).[3]

This rule that a government entity is not responsible for interest absent specific statutory authority is not without exception. *In City of Pittsburgh v. Pennsylvania Department of Transportation,* 490 Pa. 264, 416 A.2d 461 (1980), the Supreme Court affirmed an award of interest in a mandamus action brought by the City of Pittsburgh to be paid by PennDOT. In that case, the Public Utility Commission (PUC) ordered the City of Pittsburgh (City) to begin the immediate demolition and reconstruction of portions of a bridge. The PUC mandated that fifty percent of the project was to be paid by PennDOT, forty percent was to be paid by the City, and ten percent by Allegheny County. Costs of $655,731.00 were allocated to PennDOT. After repeated requests for payment failed, the City filed a petition for review in the nature of mandamus with this Court. PennDOT ultimately paid the allocated costs but refused to pay interest on that sum. When disposing of the City's petition for review, we awarded interest.

On appeal, the Supreme Court stated that the Mandamus Act of 1893, Act of June 8, 1893, P.L., *as amended, formerly,* 12 P.S. § 1919, repealed by the Act of April 28, 1978, P.L. 202, did not specifically, or by indication, provide for an award of interest against the Commonwealth. Nonetheless, it determined that the presumption relied upon by the Court in *Philadelphia* was belied by the fact that PennDOT was clearly *not* always ready to pay its obligation. *City of Pittsburgh,* 490 Pa. at 269, 416 A.2d at 464. It further added that equitable principles, despite the fact that the action in mandamus was on the law side of the Court, warranted an award of interest. *Id.*

With these statutory provisions and relevant case law in mind, we must turn to the specific issue of whether § 1716 of the MVFRL that directs payment of interest for overdue medical bills payable by an "insurer" is applicable to SEPTA. In determining whether the entity in question qualifies as an insurer under the MVFRL, the courts of this Commonwealth have looked to whether there is a policy of insurance issued to the claimant. *See Southeastern Pennsylvania Transp. Auth. v. Holmes,* 835 A.2d 851 (Pa.Cmwlth.2003)(holding an action for bad faith liability cannot be brought against SEPTA because no policy can be produced naming an insured); *Westbrook v. Rob-*

---

**3.** Section 8101 of the Judicial Code reads as follows:

Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S. § 8101.

The legal rate is 6% per year. *See* Act of January 30, 1974, P.L. 13, 41 P.S. § 202.

*bins,* 416 Pa.Super. 543, 611 A.2d 749 (1992)(holding that the Pennsylvania Assigned Claims Plan (ACP), inasmuch as it does not collect premiums or provide liability insurance, is not an "insurer" under the MVFRL); *Williams v. Tuck,* 397 Pa.Super. 213, 579 A.2d 1332 (1990)(holding that an insurer that is designated to pay first party benefits pursuant to the ACP is not deemed an "insurer" under Section 1798(b) of the MVFRL because there is no insurer-insured relationship with the claimant).

SEPTA is not licensed as an insurer and it does not do, or purport to do, the business of insurance in the Commonwealth. *Holmes,* 835 A.2d at 857. As a condition of having its vehicles registered by PennDOT, SEPTA is required to demonstrate it would be able to respond to damages for liability on account of accidents arising out of the maintenance and use of a motor vehicle. *Id.* at 858.

Based on a review of *Holmes, Westbrook,* and *Williams,* SEPTA does not meet the definition of insurer. There is no policy issued. It does not collect premiums. There is no insurer-insured relationship with an injured claimant.[4] That does not mean, however, that SEPTA is not responsible for interest on "overdue" benefits consistent with Section 1716 of the MVFRL. Recall that, consistent with *Summit House,* a government entity is responsible for interest when reasonable construction of a statute would impose liability for the same. It is acknowledged that Section 1716 speaks only in terms of an "insurer" being liable for interest when payment of a bill is not made within thirty days of receipt. There is no dispute, however, that SEPTA must comply with Section 1711 of the MVFRL that sets forth an "insurer's" liability for medical benefits. SEPTA, as a self-insurer, is liable for these benefits because Section 1787 explicitly imposes liability. Section 1787 adds that the benefits under Section 1711 shall be provided by an insurer "subject to the provisions of Subchapter B." Thus, the crux of this appeal comes down to identifying the meaning of the phrase "subject to the provisions of Subchapter B."

Providers assert that "self-insurers," as set forth in Section 1787, are subject to the requirement of Section 1716 of the MVFRL that medical bills must be paid within thirty days of receipt or interest shall be paid. Providers note that self-insurers are to pay benefits subject to the provisions of subchapter B of the MVFRL and only two exceptions are expressly pro-

---

4. Providers suggest this matter is controlled by *Collins v. Allstate Indem. Co.,* 426 Pa.Super. 197, 626 A.2d 1162 (1993). That case was brought under the Section 106(a)(2) of the Pennsylvania No–Fault Motor Vehicle Insurance Act (No Fault Act), Act of July 19, 1974, P.L. 489, *formerly* 40 P.S. § 1009.106(a)(2), repealed by the Act of February 12, 1984, P.L. 26, the predecessor to the MVFRL. That Section provided, in pertinent part:

No-fault benefits are overdue if not paid within thirty days after the receipt by the *obligor* of each submission of reasonable proof of the fact and amount of loss sustained ... Overdue payments bear interest at the rate of eighteen percent (18%) per annum ... (Emphasis added).

40 P.S. § 1009.106(a)(2) (repealed).

The Superior Court found that this statute was clear and unambiguous that insurers owed interest on unpaid no-fault benefits. *Collins,* 626 A.2d at 1170. It further found that SEPTA, despite the fact that it was a Commonwealth agency, was also responsible for interest under Section 1009.106(a)(2) of the No–Fault Act. Nonetheless, SEPTA was considered an "obligor" under the No–Fault Act. *Collins,* 626 A.2d at 1164. The phrase "obligor" is not utilized in the MVFRL as it was in the No–Fault Act. The operative term under Section 1716 of the MVFRL is "insurer." SEPTA does not meet the definition of "insurer."

vided. Self-insurers, pursuant to Section 1787 of the MVFRL are not subject to Sections 1712 and 1715.[5] Providers contend that these provisions involve insurers making certain coverage available to others that self-insurers obviously do not do. Conversely, they posit that Section 1716 deals with the timing of payment of benefits that self-insurers must provide under Section 1711 of the MVFRL. According to Providers, if SEPTA were not liable for interest, that would frustrate one of the underlying policies of the MVFRL—ensuring the prompt payment of benefits.

SEPTA acknowledges that it is only expressly excluded from complying with Sections 1712 and 1715 of the MVFRL. It sets forth, however, other provisions of subchapter B that also must be construed as not applying to self-insurers. For example, Section 1723 of the MVFRL provides that "each insurance company writing automobile insurance in this Commonwealth shall file with the Insurance Department the number of its insureds, the number of its insureds who have purchased first party medical benefits in excess of the minimum required by section 1711 (relating to required benefits) and the number of insureds who have purchased first party medical benefits under section 1715(a)(1) and (1.1) (relating to availability of adequate limits)." 75 Pa.C.S. § 1723. Further, Section 1724

of the MVFRL states that "[p]rovisions of an insurance policy which exclude insurance benefits if the insured causes a vehicular accident while under the influence of drugs or intoxicating beverages at the time of the accident are void." 75 Pa.C.S. § 1724.

Both of the provisions mentioned in the preceding paragraph involve the contents of a policy. SEPTA asserts that as it does not issue policies, these provisions cannot be applicable to it. Therefore, inasmuch as other provisions in subchapter B of the MVFRL, aside from those expressly referenced in Section 1787, cannot be construed to be applicable to self-insurers, the mere fact that Section 1716 falls within Subchapter B does not automatically mean that it applies to SEPTA as a self-insured entity.

When the words of a statute are clear and free from all ambiguity, it should be interpreted solely from the plain meaning of its words and the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758 (2005). When the words of a statute are not explicit, legislative intent may be ascertained by considering, *inter alia*, the occasion and necessity of the statute, the circumstances in which it was enacted, the mischief to be remedied, and the object to be attained by the legislation.

**5.** Section 1712 of the MVFRL provides, in pertinent part:
> An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title... shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:(1) MEDICAL BENEFIT.—Subject to the limitations of section 1797 (relating to customary charges for treatment), coverage to provide for reasonable and necessary medical treatment and rehabilitative services....

75 Pa.C.S. § 1712.
> Section 1715 of the MVFRL provides, in pertinent part:
> (a) GENERAL RULE.—An insurer shall make available for purchase first party benefits as follows:
> (1) For medical benefits, up to at least $ 100,000.
> (1) (1.1) For extraordinary medical benefits, from $ 100,000 to $1,100,000, which may be offered in increments of $ 100,000, as limited by subsection (d) ...

75 Pa.C.S. § 1715(a).

*Allegheny Sportsmen's League v. Ridge,* 790 A.2d 350, 360 (Pa.Cmwlth.2002). A court should not interpret a statute so as to render statutory language as mere surplusage. *Philips Bros. Elec. Contrs., Inc. v. Pennsylvania Tpk. Comm'n,* 960 A.2d 941, 944 (Pa.Cmwlth.2008). Exceptions expressed in a statute shall be construed to exclude all others. 1 Pa.C.S. § 1924. *See also Kmonk–Sullivan v. State Farm Mutual Automobile Ins. Co.,* 746 A.2d 1118 (Pa.Super.1999). The purpose of Section 1716 of the MVFRL is to ensure prompt payment of benefits when due or to pay the statutorily prescribed interest. *Schappell, D.C. v. Motorists Mutual Ins. Co.,* 594 Pa. 94, 934 A.2d 1184 (2007).

■ The MVFRL does not expressly indicate that self-insurers such as SEPTA are liable for interest on "overdue" medical benefits. It does expressly state, however, that self-insurers are responsible for medical benefits under Section 1711 of the MVFRL. The phrase "subject to subchapter B" must have some meaning. *Philips Bros.* Inasmuch as the interest provision is to ensure prompt payment of medical benefits, and that provision is in subchapter B, SEPTA, as a self-insurer, is liable for interest. This is bolstered by the fact that Section 1787 of the MVFRL expressly excludes self-insurers from complying only with Sections 1712 and 1715. *Kmonk–Sullivan.* As a self-insurer that does not issue policies, SEPTA cannot be bound by other provisions not expressly stated in Section 1787. Nonetheless, Section 1716 of the MVFRL calls for interest payments to be made regardless of the existence of a policy.

This matter is distinguishable from *Westbrook.* In *Westbrook,* the appellee sustained injuries while riding in a car that was involved in a motor vehicle accident. Within a month of the accident, appellee submitted an application for benefits to the ACP. The ACP assigned the claim to Travelers Insurance Co. (Travelers). Nine months after appellee submitted his claim for benefits, he filed a complaint against the ACP inasmuch as he had not received any benefits. Nearly a year later, and just prior to arbitration, Travelers paid appellee $5,000.00 in first party benefits. At the arbitration hearing, the Board found in favor of appellee and against ACP. It awarded attorney's fees and twelve percent per annum interest on the first party benefits for the period they were due but unpaid.

The ACP appealed. The trial court awarded attorney's fees and interest. On appeal, the Superior Court found the ACP could not be liable for attorney's fees because it does not meet the definition of insurer under Section 1702 of the MVFRL. Specifically, it noted that while the ACP is comprised of all the insurance companies doing business in the Commonwealth, it could not be considered an insurer as it does not collect premiums or provide liability insurance. The Superior Court further found that the ACP is not responsible to pay interest under Section 1716 of the MVFRL relying first on the fact that the ACP is not an insurer under the Act. Second, the Superior Court explained that Section 1716 of the MVFRL is located in subchapter B, whereas ACP benefits are set forth in subchapter E. Noting that there are several parallel provisions in subchapters B and E, and that the interest provision in subchapter B has no parallel, this omission indicates that the Legislature did not intend for the ACP to be liable for interest.

Neither the ACP nor SEPTA can be considered an insurer under the MVFRL. The applicable provision in the instant matter, however, is Section 1787 that incorporates the provisions of Subchapter B, including Section 1716. The applicable

provision in *Westbrook* regarding the ACP references subchapter B only to the extent that medical benefits must be paid similarly with those set forth in Section 1712(1) of the MVFRL. There is no language susceptible to interpretation that could bring the ACP under the purview of Section 1716 of the MVFRL.

■ SEPTA nevertheless contends that it must be precluded from being held responsible for interest under Section 1716 of the MVFRL because the thirty day payment requirement is not feasible. In making this argument, it relies on the following language set forth in *Westbrook*:

Finally, with respect to the 12% interest provision of section 1716, appellant offers one other practical reason why that provision should not be interpreted to apply to the PACP through subchapter E. Section 1716 imposes the 12% interest penalty once a 30–day period expires after the insurer receives proof of the amount of benefits. *In the insurer-insured relationship envisioned by section 1716 in subchapter B, this 30–day period in which the insurer must evaluate and pay the claim makes sense. The insurance company will already have information on file concerning the in-*

*sured and vehicle in question. Thus, it is a relatively simple matter for the company to evaluate the claim and verify benefits.*

*However, this same 30–day period is impractical in the arena of assigned claims. The Plan has no prior information on a claim when one is filed. This requires the plan to start its investigation from scratch.* Furthermore, there are seven eligibility requirements which must be verified before benefits can be paid. *See 75 Pa.C.S. § 1752(a)(1)–(a)(6)* (sic).[6] Unlike private policies of insurance, which are primary to any other health insurance, the benefits payable under the Plan are secondary to other forms of health coverage. Thus, an investigation into alternative forms of health coverage is also necessary. Therefore, in many cases, it would be impractical to impose the 30–day limit of subchapter B on the evaluation and payments of claims under the Assigned Claims Plan. (Emphasis added).

*Westbrook,* 611 A.2d at 754.

We reject SEPTA's argument. SEPTA, unlike the ACP, is in a position similar to, or better than, any insurer in that it will

---

**6.** Section 1752 of the MVFRL provides, in pertinent part:

(a) GENERAL RULE.—A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements:

(1) Is a resident of this Commonwealth.

(2) Is injured as the result of a motor vehicle accident occurring in this Commonwealth.

(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).

(4) Is not the operator or occupant of a motor vehicle owned by the Federal Government or any of its agencies, departments or authorities.

(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or

by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.

(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.

(7) Is not the operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle or motorized pedalcycle or other like type vehicle required to be registered under this title and involved in the accident.

75 Pa.C.S. § 1752.

have the opportunity to obtain information concerning the claim and the vehicle in question that will permit it to evaluate and pay the claim within the 30 day period. As the owner of the vehicle involved, SEPTA can usually obtain information on the occurrence sooner than an insurer who does not become aware of it until the insured owner reports it. SEPTA has the opportunity to commence an investigation immediately following an accident while fresh evidence is available. With the information on the claim and the vehicle(s) in question readily available, SEPTA is not in a worse position than an insurer to evaluate its medical responsibility for the claim. We note that SEPTA is not required to pay the claim within 30 days after the occurrence, but within 30 days after it receives reasonable proof of the amount of the benefits received.

Upon review, we conclude that the trial court did not err in finding SEPTA liable for interest for "overdue" medical bills consistent with Section 1716 of the MVFRL. Accordingly, the trial court's December 17, 2008 Order is affirmed.

### ORDER

AND NOW, this 28th day of May, 2010, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

1. 75 Pa.C.S. §§ 1701–1799.7.

2. Section 1716 of the MVFRL states:
   Benefits are overdue if not paid within 30 days after *the insurer* receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event *the insurer* is found to have acted in an unreasonable manner in refusing to pay the bene-

## DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. The majority holds that Southeastern Pennsylvania Transportation Authority (SEPTA), a self-insured Commonwealth agency, must pay interest to medical providers who do not receive payment within 30 days of the submission of an invoice by an individual claiming to have been injured in a bus accident. First, and foremost, the General Assembly did not impose a 12% late payment interest obligation upon the sovereign because the clear and unmistakable statutory language required for such an unusual liability is missing. Second, precedent teaches that requirements imposed upon commercial insurance companies by the Motor Vehicle Financial Responsibility Law (MVFRL)[1] will not be extended to self-insureds where impractical. This is the case for SEPTA.

"Insurers" are required to adjust first-party medical claims within 30 days of receipt. 75 Pa.C.S. § 1716.[2] The sanction for not meeting this deadline is the payment of 12% interest, starting on day 31, and, in some cases, a "reasonable attorney fee." *Id.* SEPTA is not an "insurer" under Section 1716, as the majority acknowledges. This does not end the inquiry, however, because Section 1787 of the MVFRL requires a self-insurer to satisfy

fits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.
   75 Pa.C.S. § 1716 (emphasis added). SEPTA does not satisfy the statutory definition of "insurer," which is a "motor vehicle liability insurer." 75 Pa.C.S. § 1702. SEPTA is not licensed as an insurer; does not do the business of insurance in the Commonwealth; does not issue policies; does not collect premiums; and has no insurer-insured relationship with injured claimants.

the Department of Transportation that it has made financial arrangements necessary to provide first-party medical benefits "subject to the provisions of Subchapter B." 75 Pa.C.S. § 1787(a)(1).[3] The question is whether the sanctions established in Section 1716 apply to SEPTA because Section 1716 is part of Subchapter B.

The majority acknowledges that many provisions in Subchapter B that relate to commercial insurance business practices simply cannot apply to SEPTA. For example, insurers must give certain notices to their policyholders and include certain mandatory provisions in their insurance policies. *See, e.g.,* 75 Pa.C.S. § 1725.[4] SEPTA cannot be expected to comply with all Subchapter B provisions because SEPTA does not issue policies and does not have policyholders. The majority reasons, nevertheless, that because Section 1716 falls within Subchapter B, its imposition on "insurers" to pay 12% interest for late payment of first-party medical bills applies to self-insureds such as SEPTA. I disagree.

First, Section 1716 does not directly bind the Commonwealth to the 12% interest obligation. Our Supreme Court has explained that a statute should not be construed to deprive the Commonwealth of property unless "the intention to do so is clearly manifest." *Lichtenstein v. Penn-*

*sylvania Turnpike Commission,* 398 Pa. 415, 418, 158 A.2d 461, 462 (1959). In the absence of a statutory provision expressly imposing an interest obligation upon the Commonwealth, no such liability will be found. *See, e.g., Summit House Condominium v. Commonwealth of Pennsylvania,* 514 Pa. 221, 523 A.2d 333 (1987). The rationale for this principle has been expressed as follows:

> The theory on which interest is allowed, except in cases of contract to pay interest, is that it is damages for delay or default in payment by the debtor, measured by a rate per cent. The state is not liable to pay interest on its debts unless bound by statute or by contract of its executive officers. The government is presumed to be always ready to pay, and it would be against public policy to declare it otherwise.

*Philadelphia County v. Commonwealth,* 276 Pa. 12, 14, 119 A. 723, 723 (1923). Section 1716 does not state that the 12% interest requirement applies to a self-insurer that is a Commonwealth agency. At best, the obligation follows indirectly from the Section 1787 filing made with the Department of Transportation to qualify as a self-insurer. In short, Section 1716 cannot be read to impose the 12% interest requirement on SEPTA.

---

**3.** Section 1787 establishes that to effect valid self-insurance, a filing must be made with the Department of Transportation that provides evidence that "reliable financial arrangements" have been made, satisfactory to "the department," that the self-insurer will

> [p]rovide the benefits required by section 1711 (relating to required benefits), subject to the provisions of Subchapter B (relating to motor vehicle liability insurance first party benefits), except the additional benefits and limits provided in sections 1712 (relating to availability of benefits) and 1715 (relating to availability of adequate limits).

75 Pa.C.S. § 1787(a)(1). A first-party medical benefit of $5,000 is required by Section 1711, which states, in relevant part:

> An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title ... shall include coverage providing a medical benefit in the amount of $5,000.

75 Pa.C.S. § 1711(a).

**4.** Section 1725 requires every policy to contain a notice in "boldface" as to whether the policy's collision coverage includes damage to rental vehicles. 75 Pa.C.S. § 1725.

Second, it is impractical to require SEPTA to pay a provider's invoice within 30 days of receipt, rendering Section 1716 another of the many provisions in Subchapter B that cannot be followed by self-insureds. *Westbrook v. Robbins*, 416 Pa.Super. 543, 611 A.2d 749 (1992), is instructive on this point.

In *Westbrook*, the Pennsylvania Superior Court held that the Pennsylvania Financial Responsibility Assigned Claims Plan was not liable to pay interest on overdue medical benefits because it was not an "insurer."[5] Like SEPTA, the Assigned Claims Plan does not collect premiums; does not issue liability insurance policies; and does not have an insurer-insured relationship with the injured claimant. The Superior Court held that it was impractical to hold the Assigned Claims Plan to the 30–day limit imposed by Section 1716. Before paying the claim, the Assigned Claims Plan has to determine whether the injured party is a Pennsylvania resident; was injured in a Pennsylvania motor vehicle accident; does not own a motor vehicle required to be registered in Pennsylvania; was not the operator or passenger of a motor vehicle owned by the federal government or an entity immune from liability; was not entitled to receive other benefits as a result of the accident; and was not the operator or passenger of a recreational vehicle. Because of these challenges, the Superior Court determined that it would be impractical to impose the 30–day requirement to pay first-party medical claims upon the Assigned Claims Plan, which is not doing the commercial business of insurance.

This rationale applies with equal force to SEPTA. Upon notice of a claim, SEPTA must send the claimant an application for benefits to determine whether the injured party has an automobile insurance policy, which is the primary source of first-party medical benefits owed to passengers injured in a bus accident. 75 Pa.C.S. § 1713. To confirm that the claimant does not own a vehicle for which insurance is required, SEPTA must request confirmation from the Pennsylvania Department of Motor Vehicles (PennDOT). Next, SEPTA must investigate the facts of the accident to determine if an accident occurred; if the claimant was involved in the accident; and if the claimant's injuries are causally related to the accident. This investigation involves interviewing the bus driver; reviewing TransPass records; examining the complete claims application; examining deposition testimony or findings by a court or arbitration panel; and reviewing the bus route to determine the location of the bus at the date and time of the alleged accident.

If SEPTA is to be required to make payment before these investigations are complete, it will be forced to pay some fraudulent claims. There are times when SEPTA receives invoices for payment when there is no evidence that a SEPTA vehicle was involved in an accident or that the claimant was a passenger. Affidavit of Francis X. Cornely, Sr., SEPTA Director of Claims, at ¶ 12; Reproduced Record at 226a. As with the Assigned Claims Plan, information vital to evaluating the medical benefit claim is beyond SEPTA's control and securing that information can take longer than 30 days.

---

5. The Assigned Claims Plan is a statutory facility established in Subchapter E of the MVFRL, 75 Pa.C.S. §§ 1751–1757. The Assigned Claims Plan provides first party medical benefits for those individuals injured in motor vehicle-related accidents who do not own a vehicle and, as such, do not have an automobile insurance policy responsible for the individual's first $5,000 in medical benefits. 75 Pa.C.S. § 1752. These persons include, for example, pedestrians or passengers injured by an uninsured motor vehicle.

In addition, SEPTA faces challenges unique to it. The Assigned Claims Plan may refuse a claim where the accident was not "reported to the police or proper governmental authority." *Gunter v. Constitution State Service Company,* 432 Pa.Super. 295, 638 A.2d 233, 236 (1994) (quoting 75 Pa.C.S. § 1702). SEPTA has no such easy out. It must investigate some claims, *i.e.,* slip and falls, where the bus driver has no knowledge of the alleged incident, there is no police report, no witnesses and no damage to a SEPTA vehicle.

It seems doubtful that the General Assembly intended that SEPTA pay providers within 30 days of receiving a claim from strangers who may, or may not, have been passengers on a SEPTA bus. A 30-day payment deadline is impractical for all the above-stated reasons. In any case, the sanction in Section 1716, which does not even refer to self-insurers, let alone self-insurers that are Commonwealth agencies, does not provide the clear and unmistakable language required to make the sovereign pay 12% interest. Accordingly, I would reverse the order of the trial court.