**Claudette HOUSTON, Louise Board on Behalf of Themselves and All Others Similarly Situated**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2011.
Decided March 10, 2011.

Michael A. Hamilton, Blue Bell, for appellant.

Michael D. Donovan, Philadelphia, for appellee Claudette Houston.

Kevin P. Kelly, Philadelphia, for appellee Louise Board.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge PELLEGRINI.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from an order of the Court of Common Pleas of Philadelphia County, Civil Division (trial court) granting Claudette Houston and Louise Board's (together, Appellees) motion for partial summary judgment and injunctive relief and declaring that SEPTA is required to comply with the mandates of Section 1797 of the Motor Vehicle Financial Responsibility Law (MVFRL)[1] when calculating payment of personal injury protection benefits on behalf of eligible claimants.

The facts of this case are not in dispute. SEPTA is a regional transportation authority, created by an act of the General Assembly, and provides transportation within the city of Philadelphia and its four contiguous counties. It is an agency and instrumentality of the Commonwealth and qualifies as a "self-insurer" under the MVFRL.[2] Section 1787(a) of the MVFRL outlines the requirements for properly effecting self-insurance and states that self-insurers operating motor vehicles in the Commonwealth must provide the benefits outlined in Section 1711. 75 Pa.C.S. § 1787.[3] Pursuant to Section 1711(a) of

---

1. 75 Pa.C.S. §§ 1701—1799.7. Section 1797 is entitled "Customary charges for treatment," and subsection (a) provides, in pertinent part:

   **(a) General rule.**—A person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first party medical benefits, including extraordinary medical benefits, for a motor vehicle described in Subchapter B (relating to motor vehicle liability insurance first party benefits) shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, which-

   ever is less. The General Assembly finds that the reimbursement allowances applicable in the Commonwealth under the Medicare program are an appropriate basis to calculate payment for treatments, accommodations, products or services for injuries covered by liability or uninsured and underinsured benefits or first party medical benefits insurance.

2. The MVFRL defines an "insurer" or "insurance company" as "[a] motor vehicle liability insurer subject to the requirements of this chapter." 75 Pa.C.S. § 1702. It defines a "self-insurer" as "[a]n entity providing benefits and qualified in the manner set forth in section 1787 (relating to self-insurance)." 75 Pa.C.S. § 1702.

3. The exact wording of Section 1787(a)(1) of the MVFRL is as follows:

   **(a) General rule.**—Self-insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, deposits, resources or commitments exist such as will satisfy the department that the self-insurer will:

the MVFRL, SEPTA must provide personal injury protection (PIP) benefits in the amount of $5,000 to eligible claimants who are injured as the result of a motor vehicle accident involving a SEPTA vehicle.[4]

On December 16, 2002, Appellees were both injured when the SEPTA bus on which they were passengers collided with a car. Both women received medical treatment and, because neither had their own insurance, their medical providers submitted bills directly to SEPTA for payment. Houston's medical bills totaled $6,864 and Board's totaled $5,800. SEPTA paid the medical providers' bills without adjusting them first, and capped payment for each Appellee at $5,000. Appellees then filed a class action complaint[5] alleging SEPTA was required to make PIP benefit payments in accordance with Section 1797(a) of the MVFRL, a cost containment provision that requires insurers to adjust medical providers' bills and pay medical expenses at no more than 110% of the allowances applicable under the Medicare program. 75 Pa.C.S. § 1797(a). According to Appellees, compliance with Section 1797(a) would result in a higher percentage of their total medical bills being paid, lowering their out-of-pocket expenses.

SEPTA filed preliminary objections to the class action complaint. The trial court sustained the preliminary objections as to Count II only, which alleged a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201-1—201-9.3, and this Count was dismissed. SEPTA also filed a motion for judgment on the pleadings, which the trial court denied. The trial court certified the order denying SEPTA's motion for judgment on the pleadings for interlocutory appeal, and the matter was stayed pending appeal. In an order dated January 12, 2006, this Court denied SEPTA's petition for review pursuant to Pa. R.A.P. 1311(b)[6] because the trial court failed to

---

(1) Provide the benefits required by section 1711 (relating to required benefits), subject to the provisions of Subchapter B (relating to motor vehicle liability insurance first party benefits), except the additional benefits and limits provided in sections 1712 (relating to availability of benefits) and 1715 (relating to availability of adequate limits).

4. 75 Pa.C.S. § 1711(a). This section provides:

(a) **Medical benefit.**—An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, except recreational vehicles not intended for highway use, motorcycles, motor-driven cycles or motorized pedalcycles or like type vehicles, registered and operated in this Commonwealth, shall include coverage providing a medical benefit in the amount of $5,000.

5. Both Houston and Board also filed individual personal injury claims against SEPTA, which they settled in January 2004 for $12,500 and $10,000 respectively.

6. Rule 1311(b) reads, in pertinent part, as follows:

Permission to appeal from an interlocutory order containing the statement prescribed by 42 Pa.C.S. § 702(b) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order in the lower court or other government unit with proof of service on all other parties to the matter in the lower court or other government unit and on the government unit or clerk of the lower court, who shall file the petition of record in such lower court.... Unless the trial court or other government unit acts on the application within 30 days after it is filed, the trial court or other government unit shall no longer consider the application and it shall be deemed denied.

Pa. R.A.P. 1311(b).

timely certify the interlocutory order and the petition for review was not timely filed. The Pennsylvania Supreme Court denied SEPTA's petition for allowance of appeal, and the matter was then remanded to the trial court for further disposition.

On January 5, 2010, the trial court held a class action certification hearing as required by Pa. R.C.P. No. 1702. Appellees then filed a motion for issue-only class certification, declaratory and injunctive relief, and partial summary judgment as to liability. SEPTA filed a cross-motion for summary judgment claiming that as a statutory self-insurer it was not subject to Section 1797(a) of the MVFRL.

The trial court issued an opinion and order granting Appellees' motion for class certification, defining the class as "all persons as to whom SEPTA has not paid or will not pay personal injury protection benefits in accordance with 75 Pa.C.S.[ ] § 1797(a) of the [MVFRL], during the period beginning July 2000 and continuing through the date of final appellate review." The trial court also granted Appellees' motion for partial summary judgment and injunctive relief and declared that SEPTA is required to comply with the mandates of Section 1797 of the MVFRL. The trial court denied SEPTA's cross motion for summary judgment and stayed the injunction pending SEPTA's appeal. SEPTA did not seek permission for interlocutory appeal of the limited class certification; therefore, that issue is not presently before this Court.

■■■ On appeal,[7] SEPTA first argues that the trial court erred in impliedly concluding that Appellees were personally aggrieved by its alleged overpayment to medical providers and, therefore, had standing to maintain an action pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541. In order to have standing to pursue litigation, including a declaratory judgment action, a party must show that he or she is aggrieved. *Johnson v. American Standard,* —— Pa., ——, 8 A.3d 318, 333 (2010); *National Rifle Association v. City of Pittsburgh,* 999 A.2d 1256, 1258 (Pa.Cmwlth.2010). Whether a party is aggrieved is established by showing that the party "has a substantial, direct and immediate interest in the outcome of the litigation." *In re Hickson,* 573 Pa. 127, 136, 821 A.2d 1238, 1243 (2003). The Supreme Court of Pennsylvania has described these elements as follows:

> A substantial interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a showing that the matter complained of caused harm to the party's interest. An immediate interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it. Yet, if that person is not adversely affected in any way by the matter he seeks to challenge, he is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge.

*Id.* (Internal citations omitted). Our Supreme Court has also recently explained that if a party's immediate interest is not apparent, the court may utilize a zone of interests analysis in determining whether

---

7. The issues before this Court are purely questions of law; therefore, our review is plenary. *In re: SEPTA MVFRL Interest Litigation,* 996 A.2d 1099, 1102 n. 2 (Pa.Cmwlth.2010). In general, summary judgment is only proper when, after examining the record in the light most favorable to the non-moving party, the record clearly demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Manley v. Fitzgerald,* 997 A.2d 1235, 1238 n. 2 (Pa.Cmwlth.2010).

or not the party is sufficiently aggrieved. *Johnson,* —— Pa. at ——, 8 A.3d at 333. However, this consideration is merely a guideline and not an absolute test. *Id.*

SEPTA first argues that Houston and Board lack standing because they both settled their personal injury claims against SEPTA, for $12,500 and $10,000 respectively, and, therefore, are no longer personally aggrieved. SEPTA's Director of Claims, Francis Cornely, testified in his deposition that SEPTA fully considered the amount of both women's outstanding medical bills, in excess of the PIP benefits SEPTA had already paid on their behalf, in determining the settlement value of their claims, and this practice is typical for SEPTA. According to SEPTA, Appellees would reap a windfall if they were entitled to damages in the amount of this excess in their class action suit, as the damages settlement of their personal injury lawsuits already reimbursed them for these expenses.

However, the agreements entered into by the parties in the previous personal injury lawsuits do not support SEPTA's claims. While Appellees both signed general releases discharging SEPTA from all manner of actions and demands of whatsoever kind, the releases also contained the express proviso "except with respect to proper payment of PIP benefits." The intent of this language is clear—the parties did not contemplate that any damages regarding the proper payment of PIP benefits were included in the settlements. If we were to accept SEPTA's argument that Appellees were already compensated on this issue it would render the language of the proviso mere surplusage without any meaning.

■ SEPTA makes several additional arguments as to why Appellees lack standing to pursue this class action. It points out that Appellees took the position that

their alleged financial losses are *not* to be measured by any amount they themselves were required to pay out-of-pocket as a result of SEPTA's failure to comply with Section 1797(a). Rather, they assert the damages are to be measured by the amount that SEPTA allegedly overpaid medical providers by failing to reduce the gross amounts of the providers' bills to 110% of the allowance under the Medicare program before paying the bills. According to SEPTA, the fact that it may have paid medical providers more than it was legally obligated to pay does not mean that Appellees personally suffered damages equal to this overpayment. SEPTA also argues that the assertion that putative class members have suffered such harm is purely hypothetical and speculative at this stage. Given these reasons, SEPTA claims that Appellees failed to prove they were personally harmed, aggrieved, or otherwise adversely affected by the manner in which SEPTA paid PIP benefits; therefore, they lack standing. We disagree.

It is clear that Appellees and the putative class members they represent are personally aggrieved by SEPTA's actions and, therefore, have standing to pursue this matter. SEPTA paid the unadjusted medical bills submitted by Appellees' medical providers and capped each Appellee's medical benefits at $5,000 based upon the unadjusted rates. As a direct result of this action, Appellees incurred and paid out-of-pocket medical expenses, which would have been paid directly by SEPTA if it had followed the medical benefit payments requirements of Section 1797(a) and adjusted the bills to not more than 110% of the applicable Medicare allowance before issuing payment. Appellees also received less "medical benefit" as a result of SEPTA's handling of PIP benefit claims as a lower percentage of their medical bills was covered. Appellees' interest in this litiga-

tion is substantial, direct and immediate. They are not merely representing the interest of all citizens in procuring SEPTA's obedience to the mandates of the MVFRL. Rather, SEPTA's failure to follow Section 1797(a) when handling PIP benefit claims caused Appellees direct harm in the form of increased out-of-pocket expenses and the receipt of diminished medical benefits. Appellees were negatively impacted in a real and direct fashion; therefore, they have standing.

■ SEPTA's argument that any harm to the putative class members is hypothetical and speculative at this stage is unavailing. SEPTA does not dispute the fact that its policy is to pay PIP medical benefits at an unadjusted rate—it does not comply with the cost containment provisions of Section 1797 when calculating payment of PIP benefits on behalf of eligible claimants. In addition, Appellees' un-rebutted expert review and audit of approximately 270 individual files revealed that SEPTA failed to pay PIP benefits in accordance with the cost containment provisions of Section 1797 in all but one case.[8] It appears that SEPTA is confusing the term harm with that of actual injury. "Class members may assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 222, 983 A.2d 652, 666 (2009) (citing *Baldassari v. Suburban Cable TV Co., Inc.*, 808 A.2d 184, 191 n. 6 (Pa.Super.2002)). Given SEPTA's admission that its regular policy is to pay PIP medical benefits at an unadjusted rate, all of the potential class members are subject to the same harm.

■ As to the substantive issue in this case, SEPTA argues that the trial court erred in declaring that it must comply with Section 1797(a) of the MVFRL when calculating payment of PIP benefits on behalf of eligible claimants. SEPTA argues that the MVFRL treats self-insurers, such as itself, differently than insurers and insurance companies, and that the obligations of self-insurers with respect to the payment of benefits are set forth exclusively in Section 1787. According to SEPTA, Section 1787 requires it to provide the first-party benefits outlined in Section 1711, subject only to certain provisions of Subchapter B. SEPTA points out that Section 1711 makes no direct reference to Section 1797; Section 1797 refers only to insurers and not self-insurers; and Section 1797 is found in Subchapter I, not Subchapter B. Therefore, SEPTA argues that the statutory language clearly and unambiguously demonstrates that self-insurers are not subject to the cost reduction provisions found in Section 1797(a).

However, we rejected a similar argument raised by SEPTA in a recent case, *In re: SEPTA MVFRL Interest Litigation*, 996 A.2d 1099 (Pa.Cmwlth.2010). That case involved a class action brought by a group of medical service providers against SEPTA for payment of overdue bills. *Id.* at 1101. Specifically, the medical providers argued that SEPTA was liable for interest on overdue benefit payments pursuant to Section 1716 of the MVFRL, which states that interest shall be due at a rate of 12% per annum on benefits that are "not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits." 75 Pa.C.S. § 1716. One of SEPTA's main arguments

---

**8.** This report also concluded that SEPTA's policy of handling PIP benefit claims systematically caused financial losses to potential members of the class, as approximately $2,000 in additional medical benefits would have been covered if SEPTA had complied with Section 1797.

on appeal to this Court was that the interest requirement of Section 1716 only referred to "insurers" and not "self-insurers." Because SEPTA did not meet the definition of an insurer under the MVFRL, it argued that it was not subject to Section 1716. *In re: SEPTA,* 996 A.2d at 1102. While we agreed with SEPTA that it did not meet the MVFRL's definition of insurer, we noted that this did not end our inquiry. *Id.* at 1104. We pointed out that Section 1787 explicitly imposed liability on SEPTA, despite the fact that it was a self-insurer, for providing the medical benefit outlined in Section 1711, subject to the provisions of Subchapter B. *Id.* Because Section 1716 is located within Subchapter B, we held that Section 1716 was applicable to self-insurers and, therefore, SEPTA was liable for interest on overdue medical bills. *Id.*

SEPTA's argument in the present case again overlooks the fact that the section at issue, the cost containment provision of Section 1797, is indirectly encompassed in the statutory obligations of self-insurers. The fact that Sections 1711 and 1797 refer to insurers rather than self-insurers is not dispositive. Section 1787 clearly mandates that a self-insurer provide evidence to the department that it has the financial ability to "[p]rovide the benefits required by section 1711 (relating to required benefits)." 75 Pa.C.S. § 1787(a)(1). The *required benefit* outlined in Section 1711 is a "medical benefit" in the amount of $5,000. 75 Pa.C.S. § 1711(a). As we indicated in *In re: SEPTA,* Section 1787(a)(1) also states that the benefits required by Section 1711 must be provided "subject to the provisions of Subchapter B (relating to motor vehicle liability insurance first party benefits)." 75 Pa.C.S. § 1787(a)(1). Section 1712, entitled "Availability of benefits" is located within Subchapter B, and subsection (1) specifically states that medical benefits are "[s]ubject to the limitations of

section 1797 (relating to customary charges for treatment)." 75 Pa.C.S. § 1712(1).

SEPTA correctly points out that not all of the provisions of Subchapter B are applicable to self-insurers. Section 1787 specifically states that, for self-insurers, the required benefits outlined in Section 1711 are subject to the provisions of Subchapter B, "*except the additional benefits and limits provided in sections 1712* (relating to availability of benefits) and 1715 (relating to availability of adequate limits)." 75 Pa.C.S. § 1787(a)(1). (Emphasis added). SEPTA argues that given these exceptions, none of the benefits outlined in Section 1712 are applicable, including that section's description of medical benefits. However, the statute specifically refers to "the *additional* benefits and limits" provided in Section 1712. The use of this specific language must have meaning—our interpretation of the statute should not render the language mere surplusage. *In re: SEPTA,* 996 A.2d at 1106. The benefits discussed in Section 1712 include the following: (1) Medical benefit; (2) Income loss benefit; (3) Accidental death benefit; (4) Funeral benefit; (5) Combination benefit; and (6) Extraordinary medical benefits. 75 Pa.C.S. § 1712. Section 1711 lists "medical benefit" as a *required* benefit, and it is clear that *all* insurers are required to provide a medical benefit under the MVFRL. Therefore, it appears that the additional benefits and limits exempted by Section 1787 include all of the other benefits, such as income loss and funeral benefits—but not a medical benefit, as this is mandatory. When reading Sections 1711, 1712, 1787 and 1797 together, it is clear that self-insurers are subject to the cost containment provisions found in Section 1797(a).

█ In addition, the statutory interpretation advanced by SEPTA is contrary

to public interest and contrary to the purpose of the MVFRL. The MVFRL is to be liberally construed in order to afford the greatest possible coverage to injured claimants. *Sturkie v. Erie Insurance Group*, 407 Pa.Super. 117, 595 A.2d 152 (1991). In close or doubtful insurance cases, a court should resolve the meaning of insurance policy provisions or legislative intent in favor of coverage for the insured. *See* 1 Pa.C.S. § 1928(c); *Motley v. State Farm*, 502 Pa. 335, 466 A.2d 609 (1983). However, these policies would be contravened by following SEPTA's proposed statutory interpretation, as an accident victim of a self-insurer would receive a lesser "medical benefit" than an accident victim of a party who purchased insurance. The General Assembly clearly did not intend such an absurd result. In addition, the General Assembly made its intentions abundantly clear, as Section 1797(a) specifically states, "[t]he General Assembly finds that the reimbursement allowances applicable in the Commonwealth under the Medicare program are an appropriate basis to calculate payment for treatments, accommodations, products or services for injuries covered by liability or uninsured and underinsured benefits or first party medical benefits insurance." 75 Pa.C.S. § 1797(a). Finally, SEPTA's statutory interpretation is contrary to its own financial interests, as the un-rebutted evidence demonstrates that if SEPTA followed Section 1797(a) in calculating the "medical benefit" for PIP claims, it would typically result in paying lower amounts to claimants.

For all of the foregoing reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 10th day of March, 2011, the order of the Court of Common Pleas of Philadelphia County, Civil Division in the above-captioned matter is hereby affirmed.